76 N.J. Super. 584 (1962)
185 A.2d 222
STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT,
v.
MICHAEL TUCCILLO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1962.
Decided October 30, 1962.
*586 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Samuel L. Marciano argued the cause for appellant (Messrs. Florio, Dunn, Marciano & Lypinski, attorneys).
Mr. Steven S. Radin, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Peter P. Cascone, Jr., Deputy Attorney General, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This appeal challenges the revocation of defendant's driver's license for one year by the Division of Motor Vehicles upon a determination by the Acting Director after hearing of careless driving (violation of N.J.S.A. 39:4-97) resulting in a fatality. The contention is that the determination of guilt of the offense was not justified by the evidence and was arbitrary.
The proofs adduced at the hearing before a hearing officer of the Division established these facts. Defendant left his place of employment by car at about 9:00 A.M. on Wednesday, October 5, 1960, after finishing his work as a truck loader at a Woodbridge bakery, some 15 miles west of the point of accident. He was driving northeasterly on Route #1 toward his Hoboken home, traveling about 41 miles per hour. At about 9:30 A.M. he was traversing an overpass at the traffic interchange at Routes #1 and #22 and descending the ramp for express traffic, at the foot of which *587 there is a long, triangular, grass-covered island separating three roadway lanes for local traffic on the right from two for express traffic on the left. The decedent, an employee of the State Highway Department, was standing on the island, picking up refuse. Defendant's vehicle left the roadway, went up over a concrete curb onto the island, and struck the decedent with such force, as described by an eyewitness, as to send him "flying through the air * * * maybe four feet off the ground." The man fell to the pavement, "hit his head and slid to a stop." After impact, the vehicle went across the island entirely and onto the local traffic lanes, swung back across the island to the express lanes, spun around, hit a pole and stopped. At that point, three of the tires on the car were found to be flat. The car stopped about 160 feet from the point of impact with the decedent and 148 feet from where the body of the decedent lay on the roadway.
Defendant testified as follows. He was 50 years of age. His work hours are irregular. On Monday, October 3, 1960, he finished work at 8:30 P.M., having put in a stint from noon that day. Normally, his next working period would have begun at 9:30 A.M. on Tuesday, October 4, 1960. But because of the illness of another employee, he was required to report at 11 P.M. Tuesday evening and work until 9 A.M. Wednesday morning, and he did so. Defendant went to bed Monday evening at 11:15 P.M. He stated he had "about eleven hours sleep, figuring to about eleven o'clock, eleven-thirty, in the morning." Actually, this would have meant 12 hours of sleep. He idled during the day, had "supper" at 5 P.M., then read the papers, lay on the couch near the television and dozed "on and off," before leaving for work at 10 P.M. and reporting at his job at 11 P.M. It thus appears, even crediting defendant's story as to when he arose Tuesday morning, that by the time of the accident he had not been to bed for 22 hours or more, the last ten of which were spent at his job of loading trucks and cleaning up the place for the next crew. The only rest he had had *588 in that 22-hour span was the "on and off" dozing on a couch, inferably interspersed with watching television, during early Tuesday evening. Moreover, this span of time was a period during which he would normally have finished work Tuesday afternoon at 5 P.M. and have been off until 11 P.M. on Wednesday. Nevertheless, he testified he was not sleepy or drowsy while driving home, just "a little tired."
Defendant testified he was "coming down the ramp," and
"to the best of my knowledge, I can remember only that I was coming down the ramp and there I completely blacked out. I don't remember. The next thing I remember was an impact, and as a result of this impact I immediately found my senses again. I had the wheel in my hand, and as I looked out, I realized I was on this island, and the next thing I heard is a boom, boom. I figured the tires were going. I heard a couple of blowouts; you know, like an explosion, a couple of explosions. Then in the meantime I looked up and I saw this man in front of me.
Q. About how far in front of you? A. I figure about when I saw him it must have been twenty-five or thirty feet.
Q. What did you do? A. I tried to hold the car down. In the meantime, the car was trying to pull me off to the left. In the meantime, I was trying to avoid hitting this man, and I was almost successful. Then I sideswiped him. I was trying to hold the car down, and at the same time the car was trying to pull me to the left."
He testified the blowouts impaired his control of the car. He never had experienced such a "blackout" before. He was not sick at the time. He had been driving 33 years, had had only four or five accidents, of minor nature, but never "received a ticket" for a driving infraction.
On cross-examination, defendant stated he saw the decedent, after impact of the car with the island, standing 25 or 30 feet in front of him. He applied his brakes and skidded on the grass. He saw a doctor the day after the accident and was given some pills to "quiet [him] down." He was examined "thoroughly" but not given any treatment for the blacking out. The doctor did not testify.
A patrolman at the scene at the time of the accident testified he talked to the defendant immediately after the occurrence. At first defendant told him he was driving in the *589 left local lane (to the right of the island) and that the decedent had "stepped off in front of him." But when it was pointed out to him that the grass was ripped up on the island, defendant altered his story to say he had been in the express lane and had "blacked out." But he told the officer that he did not see the decedent before he hit him.
A police detective who arrived at the scene about two hours after the accident testified that the physical indications were that the vehicle had traversed about 75 feet of the island. He took a signed statement from defendant at Newark police headquarters 1:30 P.M. the same day. Therein defendant stated:
"I was on, I think they call it the expressway. I come down off this ramp all of a sudden I  everything blacked out, and I remember jumping the lane. I remember trying to get the car under control and all I could see was paper and debris and stuff flying in the air. The car was taking off and I put on the brake and the car swiveled right around. The car stopped on the left hand side on the island three lanes away facing the way I was coming down. I felt my arm and head hurting me and my shoulder. I immediately got out of the car and realized I had jumped across the road. As I looked across the road I saw this man laying on the state highway with papers all strewn around him. I saw a police officer already standing by him."
The statement further recounted that the patrolman asked him what happened, and "I told him I didn't know. I didn't see this man until I saw him laying in the roadway. I didn't know I had hit anybody, until the car stopped and swirled around." He did not know what his speed was at the time of the accident.
The hearing officer found "of utmost importance * * * the defendant's own admission that he blacked out without warning." The officer concluded, practically solely on this basis, that the State's charge of careless driving was substantiated and recommended a two-year license revocation. After receiving a letter of exceptions from defendant's counsel, the Acting Director filed a memorandum decision concluding that since the defendant said he had seen the victim before striking him, had the opportunity to avoid striking *590 him by applying his brakes and had failed to do so, he was guilty of the charge. The finding of failure to apply the brakes was at odds with the proofs; and, after appeal to this court, by consent of the parties, the matter was remanded to the Division with a direction to render a new determination based on the evidence taken at the hearing. Thereupon a supplemental decision was rendered by the Acting Director. He there concluded that an explanation of the accident could not be found in any evidence of a malfunction of the vehicle causing a loss of control, nor was any other vehicle involved. Concerning the defendant's explanation that he blacked out, the Acting Director found this to lack credibility in view of the absence of prior history of blackouts or any medical evidence that would explain this isolated occurrence. The determination was that the defendant was guilty of careless driving in that he failed to keep his vehicle under control. A penalty of revocation of license of one year was imposed, consideration being given the defendant's previous clear driving record.
The defendant argues that the effect of the reasoning of the Acting Director was improperly to shift the State's burden of proof to himself; that it was arbitrary for the Director to disregard the hearing officer's fact finding that he did black out; and that the blackout was not an act of careless driving.
Our determination is, first, that before defendant testified, a prima facie case of careless driving was shown by the evidence. The vehicle was solely under defendant's control, no independent or intervening force or agency interfered with exercise of such control, and the otherwise unexplained driving of the car off the roadway, over the curb and onto the traffic island justifiably gave rise to an inference that defendant was not operating the vehicle with adequate attention or control  in other words, that he was driving carelessly within the intent of N.J.S.A. 39:4-97. While the mere occurrence of an accident does not of itself necessarily bespeak negligence or careless driving, this court has stated *591 that "it is a matter of common knowledge that when proper care is exercised an automobile ordinarily does not leave the highway, cross to the opposite side of the road and collide with a pole." Bevilacqua v. Sutter, 26 N.J. Super. 394, 398 (App. Div. 1953), and see cases cited therein; also Hendler v. Meadows, 13 N.J. Misc. 684, 180 A. 399 (Sup. Ct. 1935), affirmed 116 N.J.L. 176 (E. & A. 1936). We think this approach applies to the present factual situation.
The correctness of the action under appeal must thus be adjudged from the standpoint of the reasonableness of the Acting Director's refusal to accord credibility to defendant's explanation of a blackout. This, in turn, may depend in part upon the significance to be accorded to the defendant's use of the term "blackout" or "blacked out." If it means a total and unforewarned lapse of consciousness for physiological or pathological reasons, and the testimonial statement were credible, the defendant would have a strong case for exculpation in view of the uncontradicted testimony that nothing of this nature had ever happened to him before. See Annotation 28 A.L.R.2d 12, 35 (1953). He would then not fall within the rationale of State v. Gooze, 14 N.J. Super. 277 (App. Div. 1951), i.e., that one who knows he has a condition which might at any time produce unconsciousness may be found carelessly unheedful of the rights or safety of others if he drives a motor vehicle on the highway unaccompanied by another. But the "blackout" may have signified a fleeting loss of consciousness from drowsiness or weariness, an hypothesis discussed hereinafter.
It is argued by the State that the Acting Director was entitled on the record to find the "blackout" explanation of the accident not worthy of credence. If there were no other evidence in the record impugning defendant's credibility, we might have some hesitation in sustaining the finding of the Acting Director as to lack of credibility on the basis solely of the reasoning in the Supplemental Decision that there was no prior history of a condition conducing to the blackouts or any medical explanation of a single isolated *592 instance. But our function on review is ordinarily to determine whether the administrative finding is supported by substantial evidence "on the whole record." Atkinson v. Parsekian, 37 N.J. 143, 149 (1962); and see the discussion of this standard of review in the opinion of Mr. Justice Francis, dissenting in Ricciardi v. Marcalus Mfg. Co., 26 N.J. 445, 454, at pp. 455, 460-461 (1958). Application of that standard, particularly in the light of our power to make independent findings of fact where justice so requires, R.R. 4:88-13, entitles us to search the whole record to ascertain whether the Acting Director's decision to disbelieve the defendant is supported by more than the specific reason he assigned. We have done so, and find the result fully justified.
First, it is apparent from the recital of the evidence and proceedings above, that defendant changed his story in several material respects from the moment of the accident to his testimony at the hearing. He first told the policeman at the scene that the decedent had stepped out in front of him while he was driving in the slow lane. When the physical facts belied him, he told the officer he had been driving in the express lane but did not see the decedent before he blacked out. So, too, in his written statement the same day. At the hearing, his testimony was that he did see the decedent on the island after coming out of the blackout and unsuccessfully tried to avoid hitting him. This vacillation of itself makes defendant's credibility strongly suspect.
Second, the evidence as a whole is far more indicative of a momentary lapse of attention because of weariness or lack of adequate sleep than a pathological or physiological erasure of consciousness. The phenomenon was fleeting in duration, and the defendant had not been to bed in 22 hours or more, with only some after-dinner "on and off" dozing at the television set in the interim. The fair inferences from the evidence justify a conclusion that defendant was understating the situation when he testified he was "a little tired" when driving home. The driver of a motor vehicle on a *593 busy highway has an obligation to refrain from driving if he has reason to believe that he is so tired as not to be able to command the alertness which is reasonably necessary to keep his vehicle under control and prevent injury to person or property. See State v. Gooze, supra (14 N.J. Super., at p. 286); cf. In re Lewis, 11 N.J. 217, 221, 222 (1953). See also discussion of cases holding that falling asleep while driving a car is evidence of negligence. Annotation, op. cit., supra (28 A.L.R.2d., at pp. 45-50). As to prior lack of sleep as a factor in that regard, see id., at pp. 51-52.
We find as a fact that the most probable explanation of this occurrence is defendant's violation of the duty aforesaid. We conclude as a matter of law that this is careless driving within the meaning of the statute. In the alternative, we hold the Acting Director was justified in concluding that defendant's proofs did not satisfactorily overcome the prima facie evidence of his guilt of the charge.
We have recently noted in another connection that the area of control over licensed drivers vested in the Director of Motor Vehicles by the Legislature is one which is critically affected by an important public interest. Vance v. State, 67 N.J. Super. 63, 67 (App. Div. 1961). Current highway safety conditions, of which this court can well take judicial notice, lend emphasis to the precept that the Director's judgment in a revocation or suspension proceeding involving a fatality should not be stricken down unless a plain case of arbitrary and unreasonable action is made to appear. We cannot find this here. The charge of careless driving was established by a preponderance of the credible evidence.
We find without merit the contention that the Acting Director arbitrarily disregarded the finding of the hearing officer that defendant blacked out. If this was indeed a finding of fact, rather than a mere acceptance of what the officer unwarrantably thought was of itself a fatal admission by defendant, as it appears to us, the Acting Director, as the responsible administrative authority, was obviously free *594 to substitute his own factual conclusion for that of his agent if grounded in the evidence. See Mazza v. Cavicchia, 15 N.J. 498, 504 (1954).
Judgment affirmed.