93 N.J. Super. 567 (1967)
226 A.2d 632
ANTHONY W. TALOCCI, APPELLANT,
v.
JUNE STRELECKI, DIRECTOR OF DIVISION OF MOTOR VEHICLES, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1966.
Decided January 30, 1967.
*568 Before Judges CONFORD, FOLEY and LEONARD.
*569 Mr. Charles Frankel argued the cause for appellant (Mr. Paul J. Feldman, of counsel).
Mr. Jeffrey R. Lowe, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey).
The opinion of the court was delivered by LEONARD, J.A.D.
Appellant appeals from an order of the Director of Motor Vehicles suspending his driver's license for one year.
The suspension stemmed from a fatal accident which occurred on July 27, 1965 at or about 3:30 P.M. on Route 35, Wall Township. At the time appellant was driving his delivery truck in a southerly direction, when it went across the center line and into a lane of oncoming traffic, stalled, and was struck by an auto operated by Phillip Tucci, in which his wife Ida Tucci, the deceased, was a passenger.
As a consequence of that collision the Director notified appellant that she proposed to revoke his driver's license because of the alleged violation of N.J.S. 39:4-97 (careless driving), 39:4-82 (failure to drive on the right-hand side of the road where possible), and 39:4-84 (failure to give an oncoming driver at least one-half of the road where possible). Appellant requested a hearing, which was held on March 8, 1966 before a senior hearing officer of the Motor Vehicle Department. At that hearing police officer Robert Brice, Phillip Tucci, John R. Graves and appellant were called as witnesses.
Appellant testified to the following: He was operating his truck as aforesaid, and since it was raining very heavily his lights, windshield wipers and defroster were in operation. Immediately prior to the incident he had proceeded at about 20 miles per hour up an incline formed by a railroad overpass and was coming down at or about 25 to 27 miles per hour. When he had just crossed the bridge of the overpass he first noticed another car, driven by an unknown woman, *570 pass him on the right, and then that car immediately cut him off. He reacted by applying his brakes in order to avoid striking that car or forcing it off the road. As a result his truck slowed, skidded south and then east across the highway where it stalled for about five seconds before being struck by the Tucci automobile.
Officer Brice testified that he arrived at the scene about three minutes after the accident. He drew a diagram of the scene and described the position of the two automobiles as he found them. He placed the point of impact to be east of the center line of the road, i.e., in the northbound lane. The officer further testified that appellant gave him a statement of the accident which was substantially the same as appellant's previously noted testimony. The officer added that under normal conditions the speed limit on the roadway at the point of the accident was 50 miles per hour. On cross-examination he conceded that he had "no proof" of anything that appellant did in the operation of his motor vehicle which in his opinion "indicated careless driving."
John R. Graves, a co-employee of appellant, testified that at the time involved he was operating his delivery truck on Route 35, in a southerly direction and was about 100 feet in front of appellant. He stated that when the two trucks came over the overpass he noted in his mirror that appellant was directly behind him but when they had come down a little further, he looked again, and he noticed that another car which was very close to appellant had come between them. At that time he saw appellant's truck skid or spin across the highway and stop. However, he did not see the impact.
Phillip Tucci testified that he was proceeding north at about 25 to 30 miles per hour when "all of a sudden" he saw a truck in front of him; he impulsively stepped on his brake; his auto slowed down considerably but the front of his car skidded into and struck the right-hand side of the cab of the truck. He was unable to recall whether the truck was moving at the time of impact.
*571 Apparently the woman driver continued on and no one discovered who she was.
The hearing officer, citing the heavy rain and appellant's familiarity with this particular highway, concluded that appellant "was traveling too fast for conditions regardless of the presence of an unidentified vehicle." He then noted that if appellant had driven his truck with requisite care and at a safe speed, "he would have been able to control his vehicle regardless of any unusual circumstances that would have developed at the time." He concluded that the State's charges had been substantiated.
As a result of exceptions filed by appellant to the hearer's report, the matter came before the Director for final review and determination. Thereupon, she issued a memorandum decision wherein she stated: "* * * I am convinced respondent did not operate his vehicle with due regard for weather conditions then existing. It was his responsibility to maintain effective control of his vehicle." She found that appellant was in violation of all three charges and "that these violations did cause an accident." In arriving at this conclusion, she noted appellant's version of the accident and then stated "There was no other witness to this incident; [the alleged cut off by the other car]; therefore, respondent's [appellant's] testimony is neither supported or contradicted." Finally, she ordered the same suspension as had been recommended by the hearer.
Appellant contends that the findings failed to establish violations of Title 39 as specified above, and failed to support any reason for suspending his license. He argues that the Director completely rejected appellant's uncontradicted version of the accident and thus acted arbitrarily. He further contends that a suspension, if any, should not be as long as one year and urges this court to revoke or modify it.
Respondent contends that the decision of the Director was supported by substantial evidence and therefore should not be upset. We agree that on appeal the factual determinations of an administrative agency are generally sustained if *572 they are so supported. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962). The difficulty here is that the Director in her memorandum decision did not set forth any "factual determinations" to support her conclusion.
It is fundamental to the administrative process that the ultimate determination of the Director of Motor Vehicles be accompanied by basic findings of fact sufficient to support it. The requirement of such findings is "far from a technicality and is a matter of substance." N.J. Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 374-375 (1950); D.L. & W.R. Co. v. Hoboken, 10 N.J. 418, 425 (1952); In re Application of Hackensack Water Co., 41 N.J. Super. 408, 419 (App. Div. 1956); Susquehanna, etc., Ass'n v. Bd. of Pub. Util. Comm'rs, 55 N.J. Super. 377, 404 (App. Div. 1959). The purpose of this requirement is to enable an appellate court to review intelligently the administrative decision and ascertain if the facts upon which the order is grounded afford a reasonable basis therefor. Application of Howard Savings Institution of Newark, 32 N.J. 29, 52 (1960), Grant Lunch Corp. v. Newark, etc., Alcoh. Bev. Cont., 64 N.J. Super. 553, 560-561 (App. Div. 1960).
By reason of lack of findings as to the basic facts in the Director's conclusions, we cannot ascertain if her ultimate conclusion of careless driving (in which the other statutory violations are comprehended) was supported by substantial evidence. Therefore we remand this matter to the Director to make the necessary findings of fact. These should include the speed of appellant's truck at the time of the accident and whether or not appellant was "cut off" by an unknown woman driver. Her finding on the latter issue should include an evaluation of the credibility of the uncontradicted testimony of appellant and Graves with respect thereto. See Hornauer v. Div. of Alcoholic Beverage Control, 40 N.J. Super. 501, 506 (App. Div. 1956). Additionally, since the charge against appellant as well as the degree of penalty imposed upon him was based on the statutory violations *573 resulting in a death, findings should be enunciated as to the causal relation of appellant's conduct and the accident.
The Director, in reaching her conclusion, noted that "[T]he circumstances of the accident [appellant crossed the center line of the highway and entered the opposite lane of traffic] are prima facie evidence of the violation of careless driving * * *." While the fact that a vehicle crosses over into the wrong lane of traffic may give rise to an inference of careless driving on the part of the driver, herein appellant attempted to explain the cause of this occurrence. The Director, in reaching her ultimate conclusion, should give consideration to this explanation and indicate by her findings whether she accepts or rejects it. See State v. Tuccillo, 76 N.J. Super. 584, 590-591 (App. Div. 1962).
Finally we consider the one-year suspension imposed by the Director. In fixing the same she considered all the pertinent factors, including appellant's prior license suspension, under the Point System. Assuming appellant to be guilty of the charges, we do not find the term of the suspension to be excessive. See Cresse v. Parsekian, 81 N.J. Super. 536 (App. Div. 1963), affirmed 43 N.J. 326 (1964).
Reversed and remanded for further proceedings in accordance herewith. We do not retain jurisdiction.