FRED ATKINSON, APPELLANT, v. NED J. PARSEKIAN, ACTING DIRECTOR, DIVISION OF MOTOR VEHICLES, DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY, RESPONDENT.

STATE OF NEW JERSEY, DIVISION OF MOTOR VEHICLES, AND NED J. PARSEKIAN, ACTING DIRECTOR, PLAINTIFF-RESPONDENT, v. OLIN D. RALPH, DEFENDANT-APPELLANT.

Argued February 5, 1962—Decided April 2, 1962.

*Mr. James M. Davis, Jr.,* argued the cause for the appellant Fred Atkinson (*Messrs. Powell and Davis,* attorneys).

*Mr. Gerald M. Eisenstat* argued the cause for the defendant-appellant Olin D. Ralph (*Messrs. Shapiro, Brotman & Eisenstat,* attorneys).

*Mr. David Landau,* Deputy Attorney General, argued the cause for the respondents (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Matthew T. Rinaldo,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

PROCTOR, J.   Olin D. Ralph and Fred Atkinson, defendants in these separate actions, appealed to the Appellate Division pursuant to *R. R.* 4:88–8(a) from orders of the Acting Director, Division of Motor Vehicles, suspending their drivers' licenses for one year after each was involved in a fatal automobile accident.   After separate hearings the Acting Director found each defendant had violated the provisions of the Motor Vehicle Act, *N. J. S. A.* 39:1–1 *et seq.* and issued the suspension orders.   Because of the similarity of the issues presented, the appeals were consolidated.   While the matter was pending in the Appellate Division we granted the defendants' motions for certification.   *R. R.* 1:10–1A.

We will first consider Ralph's appeal.

At about 1:50 A. M. on June 4, 1960, Ralph was driving his automobile in an easterly direction along U. S. Route 40 in Hamilton Township, Atlantic County.   At the same time William DeHaven was driving his sports car in the opposite direction along the same road.   Both men were alone in their vehicles.   The roadway was straight, level and dry.   The two cars collided and as a result of injuries received DeHaven died without regaining consciousness.

The investigating officer, Trooper Brown of the New Jersey State Police, made a complaint against Ralph, charging him with violating *N. J. S. A.* 39:4–82 (failure to keep to the right) and *N. J. S.* 2A:113–9 (causing death by vehicle).   The municipal court held the defendant for the Grand Jury on the death charge and held the other charge in abeyance.   The Grand Jury returned a "No Bill." Thereafter, the defendant was tried in the municipal court

and found not guilty of the charge of failing to keep to the right.

As a consequence of the collision which resulted in the fatality, the Acting Director, pursuant to his authority under *N. J. S. A.* 39:5–30, notified Ralph that he proposed to revoke Ralph's driver's license because he violated *N. J. S. A.* 39:4–97 (careless driving) and *N. J. S. A.* 39:4–82 (failure to keep to the right). The notice also informed Ralph he would be afforded a hearing upon his request. Ralph so requested and a hearing was conducted by an officer of the Division of Motor Vehicles designated by the Acting Director. There were only two witnesses at the hearing, Trooper Brown and Ralph. The trooper testified he arrived at the accident scene twenty minutes after the collision. He said his investigation revealed that: In the vicinity of the accident, Route 40 is a straight and level macadam road, 20 feet wide with two nine-foot shoulders and a grass berm on each side. There was no indication of skid marks by either automobile prior to the collision. After the impact Ralph's automobile left 120 feet of skid marks starting from a point in the westbound lane three feet north of the center line, continuing in that lane for 35 feet and then crossing over to the eastbound lane and onto the south shoulder. DeHaven's vehicle left 30 feet of "slide" marks leading from the westbound road edge to its resting place on the north shoulder. Practically all of the dirt and debris resulting from the collision were located in the westbound lane. The trooper stated that the physical evidence, *i. e.,* the marks on the road ·and the location of the debris, indicated that DeHaven's vehicle was in the westbound lane, its proper lane of travel, when it was sideswiped by Ralph's car which was traveling on the wrong side of the road. He found no physical evidence to indicate DeHaven departed from his proper lane of travel. Ralph testified as follows: He saw DeHaven's car when it was one-quarter of a mile away from him. As they neared each other, he noticed DeHaven was in the

wrong lane and was not heading back into the proper lane. Ralph applied his brakes and turned to the right, but it was too late to avoid the collision. He said the accident occurred in his proper lane of travel; that "I pulled to the right almost off to the shoulder and that's when we hit." According to Ralph, his car went out of control after the impact, traveled over to the other lane and then back into his own lane. The damage resulting to the vehicles as shown by the photographs in evidence is not helpful in reconstructing the facts leading up to the collision.

The hearing officer rejected Ralph's version of the accident because "all the physical evidence at the scene points to the fact that the impact took place in the victim's lane about 3 feet north of the center line" and he found "that the State's case was substantiated by the testimony." He made a report of his findings to the Acting Director in which he recommended "the defendant's driving privilege be revoked for a period of one year." Ralph made numerous exceptions to this report. The Acting Director in reaching his determination reviewed the hearer's report along with the exceptions, and concluded:

"Defendant has testified that the decedent's vehicle was partially in the eastbound lane prior to collision and that the defendant pulled to the right to avoid collision. In his testimony and in the statement he gave voluntarily to the investigating officer, he states that the impact occurred near the shoulder of the eastbound lane. The physical evidence, such as dirt, debris, and skid marks of both vehicles, which has been offered in support of State's charges has conclusively established that the impact occurred in the westbound lane, the victim's rightful lane of travel. None of this physical evidence lends any credence to the defendant's testimony."

Accordingly, the Acting Director was "convinced" Ralph had violated *N. J. S. A.* 39:4–97 and *N. J. S. A.* 39:4–82 and thereby caused the accident resulting in DeHaven's death. He adopted the recommendation of the hearer and ordered Ralph's driver's license suspended for one year.

On his appeal Ralph first argues that the evidence does not support the Acting Director's determination that he violated *N. J. S. A.* 39:4–97 and *N. J. S. A.* 39:4–82. In this regard Ralph contends the charges against him were not proved "beyond a reasonable doubt" and therefore the Acting Director's order must fall. In support of his contention that such *quantum* of proof is necessary, he cites a number of cases, *e. g., State v. Cestone,* 38 *N. J. Super.* 139 (*App. Div.* 1955). These cases are inapplicable as they involve *quasi*-criminal prosecutions in the municipal courts for violations of the Motor Vehicle Act. In proceedings before an administrative agency, unlike the proceedings in *Cestone,* it is only necessary to establish the truth of the charges by a preponderance of the believable evidence and not to prove guilt beyond a reasonable doubt. *Freud v. Davis,* 64 *N. J. Super.* 242 (*App. Div.* 1960); *Kravis v. Hock,* 137 *N. J. L.* 252 (*Sup. Ct.* 1948); *Hornauer v. Div. of Alcoholic Beverage Control,* 40 *N. J. Super.* 501, 503 (*App. Div.* 1956); *Commonwealth v. Funk,* 323 *Pa.* 390, 186 *A.* 65 (1936). And on appeal the factual determinations of the administrative agency are generally sustained if they are supported by substantial evidence on the whole record, *Universal Camera Corp. v. National Labor Relations Board,* 340 *U. S.* 474, 95 *L. Ed.* 456 (1951); see *N. J. Bell Tel. Co. v. Communications Workers, etc.,* 5 *N. J.* 354, 378 (1950); *Hornauer v. Div. of Alcoholic Beverage Control, supra,* at *pp.* 504–6. While under *R. R.* 4:88–13 we may make independent findings of fact, this power will not be exercised if the agency's conclusion appears to be reasonable and legally grounded in the light of all the evidence upon which it is founded. See *Fanwood v. Rocco,* 33 *N. J.* 404, 414–415 (1960); *East Paterson v. Civil Service Dept. of N. J.,* 47 *N. J. Super.* 55, 65 (*App. Div.* 1957).

Ralph contends the collision occurred on his side of the road "close to the shoulder." Contrary to this uncorroborated assertion, all the physical evidence placed the

point of impact well within DeHaven's proper lane of travel. In the light of the substantial evidence before the Acting Director, we believe he could reasonably conclude as he did, that at the time of the accident Ralph failed to keep to the right and operated his automobile in a careless manner in violation of the statute.

Ralph next contends that *N. J. S. A.* 39:5–30 "does not grant the Director, acting in an administrative capacity the power to determine that there has been a violation but only the power to suspend or revoke a license once a magistrate, or the Director sitting as a magistrate has determined, on the merits, that there has been a violation." *N. J. S. A.* 39:5–2 grants the Director the same powers as a magistrate in relation to motor vehicle violations. Ralph argues that to allow the Director "to determine by administrative *fiat* that one has violated the statute, is to read a provision into the section which does not exist." Although this point was not raised before the Acting Director, the Division does not object to the introduction of the issue and we will consider its substantive worth.

The Acting Director suspended Ralph's driver's license pursuant to the power conferred upon him by *N. J. S. A.* 39:5–30. That statute in pertinent part provides:

"Every registration certificate and every license certificate to drive motor vehicles may be suspended or revoked * * * by the commissioner [director] for a violation of any of the provisions of this Title or on any other reasonable grounds, after due notice in writing of such proposed suspension, revocation or prohibition and the ground thereof.

He may also summon witnesses to appear before him at his office or at any other place he designates, to give testimony in a hearing which he holds looking toward a revocation of a license or registration certificate issued by or under his authority. * * * The actual conduct of said hearing may be delegated by the commissioner [director] to such departmental employees as he may designate, in which case the said employees shall recommend to the commissioner [director] in writing, whether the said licenses or certificates shall or shall not be suspended or revoked."

The Director's authority under *N. J. S. A.* 39:5–30 to suspend or revoke a driver's license for a violation of any of the provisions of the Motor Vehicle Act or on any other reasonable grounds is independent of any powers he as a magistrate, or any other magistrate, may have in the enforcement of the provisions of the act. The statute provides for a standard administrative hearing at which evidence is taken before the Director or such departmental employee as he may designate. In the latter case the hearer recommends to the Director whether the license shall or shall not be suspended or revoked. Based upon the evidence adduced at the hearing together with the hearing officer's recommendation, the Director determines whether or not there has been a violation of a provision of the motor vehicle statute and acts accordingly. *N. J. S. A.* 39:5–30 clearly establishes a self-contained administrative procedure enabling the Director to determine whether or not any provision of the act has been violated. There is no suggestion in the section that a proceeding before a magistrate, or the Director sitting as a magistrate, is a condition precedent to action by the Director. It follows that a conviction by a magistrate is not a prerequisite to the Director's exercise of his powers under *N. J. S. A.* 39:5–30 and we so hold.

The case of *Fredericks v. Magee,* 14 *N. J. Misc.* 538, 186 *A.* 444 (*Sup. Ct.* 1936), relied on by Ralph, is inapplicable. There the Commissioner (Director), without conducting a hearing, enforced a revocation of a motorist's license notwithstanding his prior acquittal in the recorder's court. The former Supreme Court ordered the license reinstated. Nothing is suggested in that case which would have barred the Commissioner from revoking the motorist's license if he had held a hearing under *N. J. S. A.* 39:5–30.

Our conclusion on this issue is the same as that reached by the former Supreme Court in *Kocses v. Magee,* 131 *N. J. L.* 499 (1944). There the Commissioner ordered defendant's driver's license revoked after a hearing. On

appeal from that order, the defendant argued that the Commissioner did not adhere to the statutory provisions governing proceedings before a magistrate. The court agreed, but said the Commissioner had invoked *N. J. S. A.* 39:5–30 and not his powers as a magistrate. In affirming the revocation, the court held the Commissioner's power under *N. J. S. A.* 39:5–30 and his power as a magistrate are clearly independent, there being "distinct substantive and procedural differences."

We note *N. J. S. A.* 39:5–2 grants the Director the same powers as are conferred on a magistrate in motor vehicle violations and provides that the Director may "hold court in any municipality in the State." Not only do we believe that *N. J. S. A.* 39:5–30 is unaffected by this grant of power, but there is grave doubt the Legislature could constitutionally create a court in the executive branch of government. *N. J. Const.* 1947, *Art.* III; see *State v. Osborn,* 32 *N. J.* 117 (1960).

Since Ralph's remaining argument is similar to one advanced by Atkinson, we now consider the facts of Atkinson's appeal.

On December 30, 1958 Atkinson, while operating his automobile in an easterly direction along Church Road in the Township of Medford, Burlington County, was involved in a collision with an automobile operated by Charles Little, which was proceeding in the opposite direction. The accident resulted in the death of a passenger in the Little vehicle. Atkinson was charged in the municipal court with violating *N. J. S. A.* 39:4–97 (careless driving). He was convicted of this offense and the court imposed a fine of $100 and revoked his driving privilege for an indefinite period. He appealed to the county court from this judgment. After a trial *de novo* that court affirmed the conviction and fine, but modified the sentence to eliminate the revocation of Atkinson's driving privilege. Thereafter, the Acting Director, pursuant to his authority under *N. J. S. A.* 39:5–30, notified Atkinson of the proposed revocation of

his driver's license because of his violation of *N. J. S. A.* 39:4–97 which resulted in a fatality. Atkinson was also informed he could apply for a hearing if he so desired. Atkinson so requested and a hearing was held before an officer designated by the Acting Director. The evidence clearly showed the collision occurred on Atkinson's wrong side of the road and that he was operating his vehicle in a careless manner at the time of the accident. The Division called as a witness Motor Vehicle Inspector William Truex, Jr. of the Accident Prevention Clinic. His duties included examining licensees involved in fatal accidents. He testified he examined Atkinson about ten months after the accident, and found he was physically and mentally qualified to operate a motor vehicle.

The hearing officer found the charge of careless driving was substantiated by the evidence. He made a report of his findings to the Acting Director in which he recommended Atkinson's driving privilege be revoked for one year. After reviewing the evidence, the Acting Director found it supported the charge and ordered Atkinson's driver's license suspended for one year. Atkinson concedes the evidence supports the Acting Director's conclusion that he operated his automobile in a careless manner in violation of *N. J. S. A.* 39:4–97.

Both Ralph and Atkinson argue the proceedings before the Acting Director subjected them to double jeopardy. Although they did not raise this issue before the Acting Director, we will consider it because a constitutional question is presented.

Our Constitution provides that no person shall, after acquittal, be tried for the same offense. *N. J. Const.* 1947, *Art.* I, *par.* 11. This provision and the firmly imbedded principles of common law insure against a second prosecution for the same offense where there has been either a prior acquittal or conviction. *State v. DiGiosia,* 3 *N. J.* 413, 418 (1950).

Ralph argues he has "twice been tried" for having violated *N. J. S. A.* 39:4-82. He contends he was "once acquitted" in the municipal court, and later "found guilty" of the same offense by the Acting Director. He says, "The prior acquittal should have halted the defendant from being further vexed." Atkinson asserts the county court's affirmance of his conviction and determination that his driver's license should not be revoked is final and constitutes the full punishment for his offense. He argues the suspension by the Acting Director was additional punishment for the same offense and therefore placed him in double jeopardy. The Division counters that its proceedings are purely administrative and that the double jeopardy principle applies only in criminal or *quasi*-criminal prosecutions.

The appellants rely upon *State v. Labato,* 7 *N. J.* 137 (1951) and *State v. Francis,* 67 *N. J. Super.* 377 (*App. Div.* 1961). These cases are inapplicable as they involve multiple prosecutions in the courts for criminal or *quasi*-criminal offenses. They do not involve the effect of prior prosecutions upon subsequent administrative proceedings. In *Francis* the court was concerned with whether successive prosecutions in municipal courts for violations of the Motor Vehicle Act arose out of the same offense. Likewise, *Labato* did not involve proceedings before an administrative agency. It dealt solely with successive prosecutions in the police court and county court for the possession of lottery slips.

It is well settled that the Legislature has the constitutional power to impose both a criminal and civil or administrative sanction in respect to the same act or omission. *United States ex rel. Marcus v. Hess,* 317 *U. S.* 537, 87 *L. Ed.* 443 (1943); *Helvering v. Mitchell,* 303 *U. S.* 391, 82 *L. Ed.* 917 (1937); *Stone v. United States,* 167 *U. S.* 178, 42 *L. Ed.* 127 (1897); *Silver v. McCamey,* 221 *F. 2d* 873 (*D. C. Cir.* 1955); Annot., 42 *A. L. R. 2d* 634 (1955). The double jeopardy clause merely prohibits attempting a second time to punish criminally for the same offense. *Helvering v. Mitchell, supra;* see *State*

*v. Labato, supra,* at *p.* 144. The proceedings before the Director under *N. J. S. A.* 39:5–30 are administrative and not criminal, even though they arise out of the commission of an offense punishable by the courts. See *Kravis v. Hock, supra,* at *p.* 254; 1 *Davis, Administrative Law* § 2.13 (1958). Although the suspension or revocation of a driver's license by the Director may appear to be punishment to the wrongdoer, this is not enough to characterize the statutory grant of power as criminal in nature. The primary object of the statute is to foster safety on the highway and not to impose criminal punishment to vindicate public justice. As the Appellate Division said in *Vance v. State,* 67 *N. J. Super.* 63, 67 (1961):

> "The suspension or revocation of a driver's license is not necessarily punitive in purpose. It is a measure 'for the prospective safety and protection of the traveling public in the nature of an auxiliary remedial sanction.' *Sylcox v. Dearden,* 30 *N. J. Super.* 325, 329, 330 (*App. Div.* 1954)."

When the Director exercises his administrative authority under *N. J. S. A.* 39:5–30 he determines that a law of the highway has been violated and that the highway would be a safer place for the public if the violator were removed as a driver for some period of time.

The Pennsylvania Supreme Court in *Commonwealth v. Funk,* 323 *Pa.* 390, 186 *A.* 65 (1936), has held a prior prosecution had no effect upon the subsequent administrative suspension of a driver's license. There a licensee was acquitted by the trial court of a drunken driving charge. Subsequently, as a result of the same offense, the secretary of revenue of the commonwealth, pursuant to his statutory authority, conducted a hearing and suspended the defendant's driver's license for one year after finding the defendant had operated his automobile while intoxicated. On appeal the defendant contended *inter alia* "that the secretary of revenue was precluded from suspending appellee's license by reason of his acquittal of the criminal charge." The court, in rejecting this contention, said:

"The proceedings before the secretary of revenue are civil and administrative and not criminal, even though the basis of the action may be the commission of a crime. It has been the established rule that a criminal prosecution does not bar a subsequent civil or administrative proceeding based upon the same set of facts, nor does a judgment rendered therein have any probative value in subsequent proceedings beyond the mere fact of its rendition. *Wilson v. Wilson,* 100 *Pa. Super.* 451. This is caused by the nature of the criminal proceedings and the type of proof required therein. In criminal proceedings the guilt of the accused must be established beyond a reasonable doubt. In a civil proceeding to revoke a license, it is sufficient if the offense be established by a preponderance of the evidence; this distinction is pointed out by Mr. Justice Sadler in *Barach's Case,* 279 *Pa.* 89, 123 *A.* 727."

Other states have reached the same result. *Commonwealth v. Harris,* 278 *Ky.* 218, 128 *S. W. 2d* 579 (*Ct. App.* 1939); *Prichard v. Battle,* 178 *Va.* 455, 17 *S. E. 2d* 393 (*Sup. Ct. App.* 1942); *Steele v. State Road Commission,* 116 *W. Va.* 227, 179 *S. E.* 810 (*Sup. Ct. App.* 1935).

In the light of the above, we hold that neither Ralph nor Atkinson was subjected to double jeopardy by the proceedings before the Acting Director.

The next contention raised on this appeal is Atkinson's argument that the Acting Director exercised his regulatory power in an arbitrary manner. As related earlier, the Division at the hearing called as its witness Truex, an inspector in the Accident Prevention Clinic. He said he had examined Atkinson and found he was qualified to operate a motor vehicle. According to Atkinson, the Acting Director, if he was functioning in his administrative capacity and not meting out punishment, was bound to accept Truex's conclusion, and the refusal to do so was arbitrary and capricious.

The function of the Accident Prevention Clinic established by the Division is to determine, through a series of tests, whether a driver who has had an accident or violation record, has physical deficiencies which may interfere with his ability to operate a motor vehicle. See *Bechler v. Parsekian,* 36 *N. J.* 242, 253 (1961). Truex's testimony

did not relate to Atkinson's driving conduct at the time the violation occurred. While the Director may consider the results of these tests when they are in evidence, his ultimate determination as to suspension of a driver's license and the duration thereof is reached after considering all of the evidence presented at the hearing. The Director's independent power to suspend or revoke a license under *N. J. S. A.* 39 :5–30 for a motor vehicle violation or on any other reasonable grounds is obviously not restricted by the conclusions of an inspector in the Accident Prevention Clinic. As it is conceded there was sufficient evidence to support the Acting Director's determination that Atkinson violated a provision of the Motor Vehicle Act, and since he is empowered to suspend a driver's license after so finding, we cannot see how his action can be called arbitrary or capricious notwithstanding Truex's testimony.

At the oral argument appellants for the first time challenged the length of their suspensions. As no record had been made with respect to that question, we requested the Acting Director to provide information relating to his policy with regard to suspension or revocation of licenses in death cases. In response, he submitted a fairly extensive summary to which the appellants replied by way of supplemental memoranda. We have examined this summary and the appellants' replies, and we are not persuaded that we should accept an issue of this kind at this late date.

The orders of the Acting Director are affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.