STATE OF NORTH CAROLINA v. PRESTON MAYNARD CARLISLE

No. 738SC709

(Filed 9 January 1974)

1. Statutes § 4— constitutionality of statute — construction

A statute is presumed to be constitutional and will not be declared unconstitutional by the courts unless the conclusion is so clear that there can be no reasonable doubt.

2. Constitutional Law § 24; Jury § 1— habitual offender of traffic laws — no right to jury trial

Since an action to revoke a driver's license is a civil action, jury trial is required in civil cases only for those actions which were

State. v. Carlisle

tried by jury in 1868, the date of the adoption of the N. C. Constitution, and driver's license revocation proceedings do not fall into this category, Chapter 20, Article 8 of the General Statutes providing for license revocation of habitual offenders is not void for failure to allow trial by jury.

3. **Automobiles § 2; Constitutional Law § 34— habitual offender of traffic laws — no double jeopardy**

In a proceeding to have defendant declared a habitual offender of the traffic laws and to bar him from operating a vehicle upon the highways of the State, defendant was not subjected to double jeopardy since the constitutional prohibition against double jeopardy applies only to criminal cases, a defendant is placed in double jeopardy when he is tried twice or punished twice for the same crime, and revocation of a driver's license is not a form of criminal punishment.

4. **Automobiles § 2; Constitutional Law § 24— revocation of driver's license of habitual offender — protection of constitutional rights**

Since the habitual offender statute relating to motor vehicle violations makes provision for proper notice of the proposed action under the statute, the information upon which it is based, an opportunity to employ counsel, to answer, to present evidence, and to be heard before a determination is made, and finally the right of appeal, there is nothing in the procedure under the statute which violates any constitutional rights of the person against whom the proceeding is brought.

5. **Automobiles § 1; Constitutional Law § 13— habitual offender of traffic laws — constitutionality of statute**

The habitual offender statute relating to motor vehicle violations represents a reasonable regulation of an individual right in the interest of the public good, and it is a valid constitutional exercise of the police power of the State.

APPEAL by the State from *Martin, Perry, Judge,* 4 June 1973 Session of Superior Court held in LENOIR County.

This is a proceeding instituted by the State pursuant to G.S. 20-223 to determine whether Preston Maynard Carlisle is an habitual offender of the traffic laws as defined in G.S. 20-221 and should be barred from operating a motor vehicle upon the highways of North Carolina.

Petition was filed by the solicitor on 2 April 1973 accompanied by an attached certified abstract of the driver's license record of Preston Maynard Carlisle as maintained in the North Carolina Department of Motor Vehicles. The superior court issued a show cause order directing respondent to appear for a hearing on 4 June 1973. The order, with the petition and abstract attached, was served upon respondent on 7 May 1973,

and answer was filed on 21 May 1973 asserting the unconstitutionality of the habitual offender statute.

At the hearing the State, over objection of respondent, was permitted to offer into evidence the petition, the certified abstract of the driver's license record of Preston Maynard Carlisle, and the show cause order. Respondent offered no evidence and moved to dismiss the proceeding on the ground that Article 8 of Chapter 20 of the General Statutes (G.S. 20-220 through 20-231) was unconstitutional. The court declared the statute to be unconstitutional and granted the motion to dismiss. From this judgment, the State appealed.

*Attorney General Morgan, by Assistant Attorney General William W. Melvin and Assistant Attorney General William B. Ray, for the State.*

*Sasser, Duke & Brown, by John E. Duke, for defendant appellee.*

BALEY, Judge.

The question for decision upon this appeal is the constitutionality of Article 8 of Chapter 20 of the General Statutes of North Carolina (G.S. 20-220 through 20-231), which is applicable to habitual offenders of the motor vehicle laws. The trial court has interpreted this statute to be criminal in nature requiring all the safeguards to which a defendant charged with a criminal offense is entitled, including trial by jury, protection from double jeopardy, and compliance with the due process clause of the Fourteenth Amendment. We do not agree with this interpretation and hold the statute to be constitutional.

[1]   It is fundamental that a statute is presumed to be constitutional and will not be declared unconstitutional by the courts unless the conclusion is so clear that there can be no reasonable doubt. *Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E. 2d 745; *Assurance Co. v. Gold, Comr. of Insurance*, 249 N.C. 461, 106 S.E. 2d 875; *State v. Anderson*, 3 N.C. App. 124, 164 S.E. 2d 48, *aff'd*, 275 N.C. 168, 166 S.E. 2d 49. In determining whether this statute is constitutional, it is important to consider the nature of a license to operate motor vehicles and the type of proceeding involved in the revocation of such license.

"A license to operate a motor vehicle is a privilege in the nature of a right of which the licensee may not be

State v. Carlisle

deprived save in the manner and upon the conditions pre-
scribed by statute."

*In re Revocation of License of Wright,* 228 N.C. 584, 589, 46
S.E. 2d 696, 699-700.

"'"The right of a citizen to travel upon the public
highways is a common right, but the exercise of that right
may be regulated or controlled in the interest of public
safety under the police power of the State. The operation
of a motor vehicle on such highways is not a natural right.
It is a conditional privilege, which may be suspended or
revoked under the police power. The license or permit to
so operate is not a contract or property right in a constitu-
tional sense." . . .'

". . . [I]t is well to keep in mind that the suspension
or revocation of a driver's license is no part of the punish-
ment for the violation or violations of traffic laws. It will
be deemed that the court or courts in which the licensee
was convicted, meted out the appropriate punishment under
the facts and circumstances of each case. The purpose of
the suspension or revocation of a driver's license is to pro-
tect the public and not to punish the licensee. However, the
suspension or revocation of a driver's license should serve
to impress such offender with the necessity for obedience
to the traffic laws and regulations, not only for the safety
of the public but for his own safety as well."

*Honeycutt v. Scheidt,* 254 N.C. 607, 609-10, 119 S.E. 2d 777,
780.

"[T]he revocation of a license to operate a motor ve-
hicle is not a part of, nor within the limits of punishment
to be fixed by the court, wherein the offender is tried. . . .

"'. . . Nor is it . . . an added punishment for the
offense committed. It is civil and not criminal in its na-
ture.'"

*Harrell v. Scheidt, Comr. of Motor Vehicles,* 243 N.C. 735, 739,
92 S.E. 2d 182, 185. *See also Atkinson v. Parsekian,* 37 N.J.
143, 179 A. 2d 732 (1962); *Commonwealth v. Funk,* 323 Pa.
390, 186 A. 65 (1936); *Parker v. State Highway Dep't,* 224
S.C. 263, 78 S.E. 2d 382 (1953); *Prichard v. Battle,* 178 Va.
455, 17 S.E. 2d 393 (1941).

[2]   Since an action to revoke a driver's license is a civil action,
jury trial is not necessary. Under the North Carolina Constitu-

tion every criminal defendant is entitled to a trial by jury. N. C. Const. art. I, § 24. But in civil cases, jury trial is required only for those actions which were tried by jury in 1868. N. C. Const. art. I, § 25; *Kaperonis v. Highway Commission,* 260 N.C. 587, 596, 133 S.E. 2d 464, 470; *In re Annexation Ordinances,* 253 N.C. 637, 117 S.E. 2d 795. Driver's license revocation proceedings do not fall into this category. Therefore, the statute is not void for failure to allow trial by jury.

[3] Similarly, the constitutional prohibition against double jeopardy applies only to criminal cases. *See generally Benton v. Maryland,* 395 U.S. 784 (1969). A defendant is placed in double jeopardy when he is tried twice or punished twice for the same crime. *State v. Summrell,* 282 N.C. 157, 192 S.E. 2d 569; *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838. Since the revocation of a driver's license is not a form of criminal punishment, it cannot constitute double jeopardy. *Atkinson v. Parsekian, supra; Commonwealth v. Funk, supra.*

Article 8 of Chapter 20 simply establishes a procedure in North Carolina under which the driver's licenses of habitual offenders of the motor vehicle laws may be revoked. It sets out a policy "to provide maximum safety for all persons who travel or otherwise use the public highways of this State; and [t]o deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this State. . . ." G.S. 20-220. Section 20-221 enumerates in detail the type and number of convictions necessary to constitute an "habitual offender." When the record maintained by the Commissioner of Motor Vehicles appears to bring any person within the definition of an habitual offender, the Commissioner shall certify in the manner provided by G.S. 20-42(b) abstracts of the conviction record of such person to the superior court solicitor of the judicial district in which such person resides, and this abstract may be admitted into evidence to show that the person named therein was duly convicted of the offenses set out in the abstract. Upon receiving the abstract of the conviction record from the Commissioner, the solicitor shall file a petition in the appropriate judicial division requesting the court to determine whether the person named in the abstract is an habitual offender. When the petition is filed, the superior court judge shall enter an order directing the person named in the petition and abstract to

appear at the next criminal session of the court and "show cause why he should not be barred from operating a motor vehicle on the highways of this State." A copy of the petition, the show cause order, and the abstract of the conviction record shall be served upon the person named therein. G.S. 20-225 sets out the hearing procedure:

"The matter shall be heard at the criminal session of the court by the judge without a jury. If such person denies that he was convicted of any offense shown in the abstract and necessary for a holding that he is an habitual offender, and if the court cannot, on the evidence available to it, determine the issue, the court may require of the Department of Motor Vehicles certified copies of such records respecting the matter as it may have in its possession. If, upon an examination of such records, the court is still unable to make such determination, it shall certify the decision of such issue to the court in which such conviction was reportedly made. The court to which such certification is made shall forthwith conduct a hearing to determine such issue and send a certified copy of its final order determining such issue to the court in which the petition was filed."

G.S. 20-226:                                              .

"If the court finds that such person is not the same person named in the aforesaid abstract, or that he is not an habitual offender under this article, the proceeding shall be dismissed, but if the court finds that such person is the same person named in the abstract and that such person is an habitual offender, the court shall so find and by appropriate judgment shall direct that such person not operate a motor vehicle on the highways of the State of North Carolina and to surrender to the court all licenses or permits to operate a motor vehicle upon the highways of this State. The clerk of the court shall forthwith transmit a copy of such judgment together with any licenses or permits surrendered to the Department of Motor Vehicles."

G.S. 20-230:

"An appeal may be taken from any final action or judgment entered under the provisions of this article in the same manner and form as appeals in civil actions."

.

State v. Carlisle

[4]   There is nothing in the procedure under Article 8 of Chapter 20 which violates any constitutional rights of the person against whom the proceeding is brought. Provision is made for proper notice of the proposed action under the statute, the information upon which it is based, an opportunity to employ counsel, to answer, present evidence, and to be heard before a determination is made, and finally the right of appeal. There is no provision for jury trial and no question of double jeopardy as the respondent is not being charged with a criminal offense. Habitual criminality is considered to be a status, not a crime. Respondent's guilt or innocence of specific offenses upon his record has already been determined. The only matter at issue is the fact of previous convictions. The existence of these convictions is of record in the courts where they were obtained. If there is a specific denial of the conviction of any previous offense, the court is instructed to determine this fact through appropriate procedure. The court must satisfy itself that respondent is the same person convicted of the previous offenses and that he is an habitual offender. In our view there are adequate safeguards in the statute to require proper identification and avoid any arbitrary or capricious judgment.

[5]   The purpose of legislation of this type is to protect society from those who have demonstrated that their driving presents a hazard to life and property. The habitual offender statute relating to motor vehicle violations represents a reasonable regulation of an individual right in the interest of the public good. We hold that it is a valid constitutional exercise of the police power of the state.

The judgment of the trial court is reversed, and the cause remanded for hearing.

Reversed.

Judges MORRIS and HEDRICK concur.