710 A.2d 1015

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTEC-
TION, DIVISION OF SOLID WASTE MANAGEMENT, PETI-
TIONER–RESPONDENT, v. LOUIS PINTO AND SON, INC., RE-
SPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1997—Decided January 12, 1998.

Before Judges LONG, STERN, and KLEINER.

*Samuel A. Wolfe,* argued the cause for appellant (*Bennett & Yoskin,* attorneys; *Neil Yoskin,* of counsel and on the brief; *Mr. Wolfe,* on the brief).

*Christine Piatek,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Piatek,* on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

On November 22, 1994, respondent, Department of Environmental Protection (DEP), issued a Notice of Revocation of Solid Waste Transporter License to appellant, Louis Pinto and Son, Inc., Sanitation Contractors, a/k/a Louis Pinto and Son, Inc., a/k/a Pinto and Sons, John Pinto, President (hereinafter Pinto), pursuant to the Solid Waste Management Act, *N.J.S.A.* 13:1E–126, *et seq.* (A–901). The Notice claimed that Pinto, which had been a solid waste hauler since 1971, and had "grandfather" status under A–901, was guilty of a series of violations including, but not limited to, operating without a permit; illegal sale of mulch; failure to disclose the connection between John Pinto and certain other corporations; and failure to file a fictitious name certificate. The Notice also claimed that Pinto was the subject of numerous summonses and warnings for violations of DEP rules and regulations, and in addition, that John Pinto was the owner of Total Solid Waste Recyclers, which corporation had been found guilty of violating the criminal laws of this State. Based on this, the DEP proposed to revoke Pinto's license for the following reasons:

(a) Pursuant to *N.J.S.A.* 13:1E–133(a), Louis Pinto & Son, Inc. a/k/a J. Pinto & Sons and John Pinto have not exhibited the required integrity, reliability, expertise, and competency to engage in the collection or transportation of solid waste.

(b) Pursuant to *N.J.S.A.* 13:1E–133(b)(19) and *N.J.S.A.* 13:1E–133(b)(22), John Pinto has violated criminal provisions of New Jersey's environmental protec-

tion laws, rules, or regulations and violated the Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–1 et seq.

(c) Pursuant to *N.J.S.A.* 13:1E–133(c), John Pinto does not possess a reputation of good character, honesty and integrity.

(d) Pursuant to *N.J.S.A.* 13:1E–133(e), John Pinto has pursued economic gain in violation of the criminal or civil public policies of this State.

The Notice also stated:

## NOTICE OF RIGHT TO A HEARING

47. Pursuant to *N.J.S.A.* 52:14B–1 *et seq., N.J.S.A.* 13:1E–12, *N.J.S.A.* 13:1E–134 and *N.J.S.A.* 13:1E–9, Louis Pinto & Son, Inc., a/k/a J. Pinto & Sons and John Pinto are entitled to an administrative hearing on this Notice of Revocation of Solid Waste License. Any hearing request must be delivered to the address referenced in the paragraphs below within thirty (30) calendar days from receipt of this document.

Pinto requested a hearing before the Office of Administrative Law which took place in February 1996. The Initial Decision of the ALJ, which characterized the action as a "revocation proceeding," found that the DEP had proved "by a preponderance of evidence" the allegations set forth in the Notice. Inexplicably, the ALJ went on to conclude that Pinto had "failed to meet *his burden of proof*" (emphasis added) in that he failed to "establish his reputation for good character, honesty and integrity by clear and convincing evidence." As a result, she determined that the "record herein compels revocation of the A–901 license of Louis Pinto & Sons, Inc. and its owner John Pinto." She ordered that Pinto's "A–901 license should be revoked."

The Commissioner of the DEP, apparently recognizing that the ALJ had erred at the point at which she indicated that Pinto bore the burden of proof in a revocation proceeding, attempted to salvage things by stating in his Final Decision that the ALJ had recommended not only revocation of Pinto's license but also "*denial of application for A–901 licensure . . . .*" (emphasis added). His purpose was obviously to incorporate the burden of proof in an initial licensure proceeding into this revocation proceeding. Indeed, he said as much:

Respondent contends that the ALJ erroneously transposed the burden of proof set out in the statute governing issuance of an initial license into this revocation proceeding. The standard to which respondent objects provides for disqualification:

> If the Attorney General determines that there is a reasonable suspicion to believe that a person required to be listed in the disclosure statement . . . does not possess a reputation for good character, honesty and integrity, and that person or the applicant fails, by clear and convincing evidence, to establish his reputation for good character, honesty and integrity.

> *[N.J.S.A.* 13:1E–133(c) ].

Respondent errs in assuming that a different standard of proof applies in the revocation of his grandfathered A–901 status than in the denial of an application for an A–901 license. As previously discussed, the finding that respondent does not meet the Act's requirements serves as the basis for both the revocation of the "grandfathered" status and the denial of an initial license. Because Pinto has not previously applied for and been issued an A–901 license in accordance with *N.J.S.A.* 13:1E–133, its contention that "[t]he burden of proof in an A–901 license revocation should be allocated in the same manner as the burden of proof in other types of license revocations: the agency seeking to revoke the license bears the burden of proof" is inapt. Furthermore, the "clear and convincing" standard, which Pinto must satisfy, comes into play only after the Attorney General has mustered sufficient evidence to support a "reasonable suspicion" that a person required to be listed on the disclosure statement does not possess a reputation for good character. Thus, contrary to respondent's claim that the statute permits the Department to put a permittee out of business "based on nothing more than the Attorney General's suspicion," the above-quoted provision expressly allows an applicant or permittee the opportunity to present its case as to why licensure is appropriate.

Moreover, the record clearly supports the ALJ's conclusion that John Pinto failed to meet his burden of proof (I.D. at 21). John Pinto is president and a key employee of both Pinto and Total. As discussed above, the Department provided ample documentary and testimonial evidence that Total collected and disposed of solid waste without a CPCN or registration and that Pinto and Total operated an uncertificated solid waste facility, in both cases in the face of repeated warnings and notices of violation from the Department. In addition, the Department demonstrated that John Pinto personally and as head of Pinto certified as complete disclosures which were not complete and, as head of American, admitted to failure to collect the legally required sales tax. Respondent's attempts to explain these failures have been analyzed and found wanting.

In short, the Initial Decision applied the appropriate legal standard and respondent's claims to the contrary are contradicted by the record, unsupported by existing law, and opposed by the public policies embodied in the A–901 licensing statute.

The Commissioner went on to revoke Pinto's license and to deny it A–901 licensure.

Pinto appeals, contending that the ALJ and the Commissioner erred in allocating to it the burden of proving by clear and convincing evidence its entitlement to licensure; that this was purely a revocation proceeding and not an application for licensure; and that the burden was on the DEP to prove a need for revocation by a preponderance of the evidence. Pinto also argues that the record does not support revocation of its license.

We will deal only with the procedural issue here. In our view, the ALJ correctly characterized this proceeding as one for revocation only. This was all that Pinto had received notice of and was the basis upon which the case was tried. Although the Commissioner attempted to add the A–901 application for licensure to his decision, it was too late for him to do so. Moreover, we disagree with his analysis of the burden of proof issue on revocation. The burden was on the DEP to show by a preponderance of the evidence that Pinto's right to engage in the solid waste transportation business should be revoked. *See In re Polk License Revocation*, 90 *N.J.* 550, 449 *A.*2d 7 (1982); *Atkinson v. Parsekian*, 37 *N.J.* 143, 179 *A.*2d 732 (1962). Pinto bore no burden in such a proceeding. Thus, it is clear that at the point at which the ALJ concluded that "Pinto failed to meet his burden of proof," a critical error occurred. That error was compounded by the Commissioner's obvious attempt to save the case by adding to it the denial of Pinto's A–901 "application."

To be sure, the Revocation Notice incorporated substantive aspects of the A–901 licensure standard. The Notice referenced *N.J.S.A.* 13:1E–133(a) which states that the department must find that the applicant is likely to exhibit "integrity, reliability, expertise and competence." It also adverted to *N.J.S.A.* 13:1E–133(b)(19) & (22) & 133(e) which prohibit licensure for specified criminal and regulatory violations. Further, it referred to *N.J.S.A.* 13:1E–133(c) which states that licensure will be withheld if the Attorney General finds "there is reasonable suspicion to believe" that the applicant or permittee or its owners and key employees do "not possess a reputation for good character, hones-

ty and integrity ..." and the applicant or permittee cannot establish by clear and convincing evidence, his reputation for such qualities.

These references do not alter the fundamental nature of the proceeding against Pinto as one for revocation. Thus, in moving to revoke Pinto's license on the bases asserted in the Notice, the DEP had the duty to prove Pinto's lack of integrity, reliability, expertise, good character, honesty and competence and its commission of criminal and regulatory offenses by a preponderance of the evidence. We reverse and remand the case to the Commissioner for a complete review of the record and the issuance of a new opinion applying the correct burden of proof to this proceeding which is for revocation only. In so doing, he should address the substance of Pinto's claim that its revocation is out of synch with the outcomes in other similar cases.

The Commissioner should issue his decision within 45 days of this date. Thereafter, the parties may simultaneously exchange supplemental appellate briefs within 10 days.

Jurisdiction is retained.