**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0919-19

RICHARD BELSITO,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued July 6, 2021 – Decided August 26, 2021

Before Judges Suter and Smith.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. x-xxxx531.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Jeffrey D. Padgett, on the brief).

PER CURIAM

Petitioner Richard Belsito appeals from the September 19, 2019 denial of his application for accidental disability retirement benefits by respondent Board of Trustees (Board), Public Employees' Retirement System (PERS). We affirm the final agency decision.

I.

Petitioner was employed as a Senior Maintenance Operator for the Pennsauken Sewage Authority for approximately seventeen or eighteen years. In 2000, he sustained a fracture of his left radius that required surgical repair through an "open reduction [with] internal fixation . . . ." This was not a work-related injury. He was out of work for six to eight months and returned full-time without restrictions. His duties at work included "pump station maintenance, daily sewer line maintenance, working with pipe wrenches, manual and pneumatic tools, jackhammers, lifting and maintaining heavy items such as manhole liners and covers, and signs." When he was not at work, he maintained a home, bowled and played softball. He also played the drums. He denied missing any other time from work due to the injury from 2000.

A-0919-19

On October 19, 2015, petitioner and three co-workers were holding a heavy sign. One of the co-workers slipped, causing the weight of the sign to shift to petitioner. The sign "torqued" his left hand.

Petitioner reported the incident to his supervisor. He obtained medical treatment consisting of a soft cast and a cortisone injection. When the left wrist continued to hurt, an MRI was performed in November 2015. This showed degenerative arthritis with swelling. There was a "split" of the "extensor carpi ulnaris [ECU] tendon." Petitioner stopped working in December 2015.

In May 2016, petitioner saw David Markowitz, M.D., complaining of pain in his left wrist radiating into his fingers and up his left arm. Dr. Markowitz recommended an orthopedic follow-up. In July 2016, Jonas Matzon, M.D. operated on petitioner's left wrist. Dr. Matzon reported that petitioner's wrist showed "severe mid-carpal arthritis." He performed an "ulnar nerve release" and partial wrist fusion on the palm side of the wrist. The surgical report indicated there were "arthritic changes throughout the capitolunate joint." It did not report the presence of any "osteophytes."[1]

---

[1] An osteophyte is defined as "a bony outgrowth or protuberance." Steadman's Medical Dictionary, 1391 (28th Ed. 2006).

Shortly after this — in December 2016 — petitioner's treating doctor, Frederick Ballet, diagnosed petitioner with "SLAC" wrist or a "scapholunate advanced collapse wrist."[2] Petitioner's January 2017 MRI also showed "mild degenerative changes" at the radial joint with swelling "which could be reactive to degenerative or postoperative changes."

Petitioner underwent a second surgery by Dr. Matzon in March 2017 because petitioner continued to complain of pain in his left wrist. Surgery revealed "tenosynovitis" and the "split tear" of the ECU tendon An osteophyte was removed from the dorsal (top) side of the wrist.

Petitioner applied for accidental disability retirement benefits, but the PERS Board denied his application in October 2017, granting him ordinary disability retirement benefits. The Board advised petitioner that although it found he was "totally and permanently disabled from the performance of [his] regular and assigned job duties[,]" the event that caused the disability was not "undesigned and unexpected." The Board found petitioner's disability was "not

---

[2] A SLAC wrist is defined as "a late complication of dislocation at the joint between the scaphoid and lunate bones of the wrist. Osteoarthritis later develops at the radioscaphoid joint (the joint between the radius and the scaphoid bone) and in the joints between other small carpal bones." Attorneys' Dictionary of Medicine, (Aug. 2021).

the direct result of a traumatic event" but was the "result of a pre-existing disease alone or a pre-existing disease that [was] aggravated or accelerated by the work effort." Petitioner appealed the denial, and the matter was transmitted to the Office of Administrative Law (OAL) for a hearing, which was conducted in March 2019.

In addition to petitioner's testimony, David Weiss, D.O. testified for petitioner as an expert in orthopedics and impairment and disability. He conducted an independent medical examination of petitioner, testifying about petitioner's two surgeries and the medical reports. He concluded that petitioner had pre-existing osteoarthritis from the 2000 accident which was aggravated by the 2015 accident. Dr. Weiss concluded that petitioner's disability was substantially caused by the injury at work in 2015 because there was no medical history that he was having any problem with his wrist from 2000 to 2015. He opined petitioner was "totally and permanently disabled" from his job "directly attributable to the defined, traumatic induced work[-]related injury of October 19, 2015."

The State presented Jeffrey Lakin, M.D., who was qualified as an expert in orthopedics. He testified from a review of the medical records and his examination of petitioner. Dr. Lakin diagnosed petitioner as suffering from

A-0919-19

"SLAC" wrist from a tear to the "scapholunate ligament." Such a tear changes the motion of the wrist and over time and "predictable patterns of arthritis" occur. Dr. Lakin noted that petitioner had this condition before the accident in 2015, and it was caused by the 2000 surgery, which led to arthritis. He testified the SLAC wrist condition was "progressive" and would have gotten worse even without the 2015 accident. Dr. Lakin testified that petitioner was suffering from advanced arthritis of the wrist, and that surgery on the wrist was inevitable.

In Dr. Lakin's opinion, the arthritis of the wrist from the 2000 accident "was the substantial major contributor[] to his disability . . . ." He reached this opinion even though there was no documentation that petitioner complained about his wrist before the 2015 injury. Dr. Lakin testified that with this amount of arthritis, there had to be a loss of motion and symptoms.

The ALJ issued an initial decision on August 7, 2019, concluding petitioner's wrist injury did not directly result from the 2015 work-related accident, but he was disabled due to the preexisting arthritis from the early non-work-related accident. The ALJ found petitioner to be "permanently and totally disabled from performing his job duties." The traumatic event occurred as part of his regular duties and was "undesigned and unexpected."

A-0919-19

The ALJ found that Dr. Weiss' opinion was not consistent with the objective testing, with petitioner's treating physician or with Dr. Matzon's operative report from the 2016 surgery. Dr. Lakin explained that the osteophyte in petitioner's wrist was not noted in Dr. Matzon's operative reports because he was looking at the palm side of the wrist not the dorsal side where it was located. Also, the ALJ noted that Dr. Weiss had relied on the AMA Guidelines to Injury Causation, which have not been adopted by New Jersey.

The ALJ found

> that Dr. Lakin presented a more compelling case in finding that petitioner's current symptomology is the result of an exacerbation of his pre-existing osteoarthritis caused by the injury he suffered and surgery he underwent in 2000, than that presented by Dr. Weiss finding that petitioner's current disability is the direct result of injuries sustained in the incident on October 19, 2015.

The ALJ concluded that petitioner's disability was "the result of a pre-existing degenerative disease, osteoarthritis, which was aggravated or accelerated by his work effort."

Petitioner filed exceptions from the ALJ's initial decision. On September 19, 2019, the Board adopted the initial decision, finding that although the accident was "undesigned and unexpected" it was not a "direct result" of the 2015 incident.

7

On appeal, petitioner contends he "demonstrated his disability was 'substantially caused' by the October 19, 2015 incident."  He argues the ALJ applied an incorrect legal standard by requiring petitioner to prove the incident was the sole cause of his permanent disability, rather than the substantial contributing cause of the permanent disability.

## II.

The scope of our review in an appeal from a final decision of an administrative agency is limited.  Russo v. Bd. of Trs., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)).  The agency's decision should be upheld unless there is a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Ibid. (quoting Herrmann, 192 N.J. at 27-28).  Our review of an agency's decision is limited to considering:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

8

We are required to affirm an agency's findings of fact if "supported by adequate, substantial and credible evidence . . . ." In re Taylor, 158 N.J. 644, 656-57 (1999) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We are not, however, bound by the "agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

N.J.S.A. 43:15A-43 affords accidental disability benefits to state workers who become "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties . . . ." Under Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212-13 (2007), our Supreme Court noted that to obtain accidental disability benefits, the member must show:

> (1) that he [or she] is permanently and totally disabled;
>
> (2) as a direct result of a traumatic event that is
>
> > a. identifiable as to time and place,
> >
> > b. undesigned and unexpected, and
> >
> > c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

A-0919-19

(3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;

(4) that the disability was not the result of the member's willful negligence; an[d]

(5) that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[Ibid.]

The "direct result" standard in Richardson is satisfied where the applicant demonstrates that a traumatic event was "the essential significant or the substantial contributing cause of the resultant disability." Gerba v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 174, 186 (1980). However, an individual does not qualify for accidental disability benefits if the disability is caused by an underlying condition, which has not been directly caused, but is only aggravated or ignited by the traumatic event. "Where there exists an underlying condition . . . which itself has not been directly caused, but is only aggravated or ignited, by the trauma, then the resulting disability is . . . 'ordinary' rather than 'accidental' . . . ." Ibid.; see also N.J.S.A. 43:15A-43(a) ("Permanent and total disability resulting from a cardiovascular, pulmonary or musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability.").

An applicant does not need to prove the traumatic event is the "sole or exclusive causative agent" of the applicant's disability. Korelnia v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 83 N.J. 163, 170 (1980) (citing Gerba, 83 N.J. at 186). "[A]n accidental disability may under certain circumstances involve a combination of both traumatic and pathological origins." Ibid. (citing Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys., 69 N.J. 578, 586 (1976)). The burden of establishing direct causation between total disability and a traumatic event rests with the applicant. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962) (citations omitted).

Guided by these principles, we perceive no basis to disturb the Board's findings, which are supported by sufficient credible evidence in the record. Neither party disputes that petitioner satisfied the factors in Richardson except for the requirement that he show his disability was "not the result of pre-existing disease that is aggravated or accelerated by the work . . . ." Richardson, 192 N.J. at 213. Petitioner argues that the 2015 work-related accident was the substantial cause of his disability.

We reject petitioner's argument that the ALJ applied an incorrect standard. The ALJ's decision, which was adopted by the Board, found that the trauma in

11

October 2015 was not a significant contributory cause of the accidental disability. This was the correct standard under Gerba.

Here, the decision to deny an accidental disability pension was supported by the record. Dr. Lakin testified that petitioner was suffering from SLAC wrist and that osteoarthritis had developed over time from his injury and surgery in 2000. This was a progressive condition. Dr. Lakin's opinion was supported by the treating doctor's report and petitioner's medical records. He had advanced arthritis by December 2016. It was shown in the surgeries, the MRI and x-rays. The ALJ gave greater weight to Dr. Lakin's testimony, who was found to be credible.

This decision is consistent with Petrucelli v. Board of Trustees, Public Employees' Retirement System, 211 N.J. Super. 280, 287 (App. Div. 1986). In Petrucelli, the petitioner had a preexisting condition that was not symptomatic and might not have become symptomatic but for the fact he was injured in a fall. He sought accidental disability retirement benefits. Id. at 281. The Court found the "direct result" test was satisfied because it was "entirely speculative" whether he would have developed back symptoms independent of the fall. Id. at 289.

In contrast, there was testimony in this case that petitioner's condition was not stable. The SLAC wrist was preexisting and progressive. Both surgeries addressed petitioner's arthritic conditions according to Dr. Lakin. He reviewed the November 2015 MRI that showed degenerative changes of the wrist. This was shown again in 2016 and 2017. He found this was an aggravation of the preexisting condition, not as a result of the 2015 accident, but from the 2000 accident. There was substantial credible evidence to support the ALJ and Board's finding that the preexisting condition (arthritis) was the substantial contributory cause of petitioner's disability rather than the traumatic event. Under Gerba and progeny, the Board was correct to deny petitioner's claim for an accidental disability pension.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0919-19