Commonwealth *v.* Abraham.

Argued December 7, 1972, before Judges CRUMLISH, JR., WILKINSON, JR., and MENCER, sitting as a panel of three.

*Stuart A. Liner,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General,

*Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellant.

No appearance for appellee.

OPINION BY JUDGE MENCER, February 26, 1973:

On May 4, 1970, on Route 56 in Cambria County, Anthony Michael Abraham (appellee) was apprehended for operating a motor vehicle while under the influence of intoxicating liquor, a violation of Section 1037 of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §1037, and, after being so charged, refused to submit to a breathalyzer test as provided in the so-called "Implied Consent Law," Section 624.1(a), of the Code, 75 P.S. §624.1(a). Having received a report of this refusal, the Secretary of Transportation, under Section 624.1(a), suspended appellee's operator's license for six months, effective June 12, 1970. The Court of Common Pleas of Cambria County, after granting a supersedeas on June 11, 1970 (appellee's license was restored June 19, 1970), sustained appellee's appeal and reversed the Secretary's suspension. The Commonwealth has appealed to this Court.

On September 21, 1970, the lower court, in a separate appeal, found appellee not guilty of operating under the influence of intoxicating liquor. The court therefore reasoned, in the suspension appeal, that where the court finds as a fact that the operator was not driving while under the influence of intoxicating liquor then the operator cannot be "found guilty" of refusing to undergo a breathalyzer test.

This is clearly incorrect reasoning. Despite the fact that the charge against appellee was dismissed, there remains the separate refusal to take the test. For the simple reason that the suspension was a civil proceeding, and the acquittal was a result of a criminal proceeding, the Secretary acted properly. *Accord, Appeal*

*of Walker,* 20 Ches. Co. Rep. 154 (1972). As stated in Annot., 96 A.L.R. 2d 612, 614 (1964), "However, where those circumstances which were the basis of the revocation or suspension were also the basis of charges in a previous criminal case, it might seem to the layman driver that the state has been allowed to try him twice for the same offense, and his notions of fair play might be injured all the more where the previous criminal prosecution resulted in a determination that he was 'not guilty.' Notwithstanding the notions of fair play entertained by laymen, however, what little authority there is on the subject holds that the later proceeding to revoke or suspend his license, since not intended as a punishment of the driver but designed solely for the protection of the public in the use of the highways, does not in the legal sense subject him to double jeopardy or punishment, nor is a judgment of acquittal in the previous criminal case res judicata on the issue of guilt or innocence in the later proceeding, for, as stated by [Commonwealth v. Funk, 323 Pa. 390, 186 A. 65 (1936)], such judgment does not have any probative value in the subsequent proceeding beyond the mere fact of its rendition, the reason for this being found in the nature of the criminal proceedings and the type of proof required therein, for in a criminal proceeding the guilt of the accused must be established beyond a reasonable doubt, whereas in a civil proceeding to revoke a license it is sufficient if the offense is established by a preponderance of the evidence."

It is not disputed that appellee was not warned that his refusal to take the test might result in a suspension of his license. The lower court gave as a further reason for overturning the Secretary's suspension that appellee had a right to be so informed. We must conclude that the lower court erred in its conclusion.

"The underlying rationale of an implied consent statute is that a person has only a privilege granted by

the state to operate a motor vehicle upon public highways, not an absolute property right. The Pennsylvania courts have consistently held that the motor vehicle operator's license is a mere privilege, not a property right or a contract, which allows its holder a limited right to use the public highways. The Commonwealth, acting through the General Assembly, may direct the conditions under which [the] privilege may be exercised.[1] The license may be revoked by the issuing authority for due cause such as the failure to exercise a reasonable degree of safety or other conditions imposed by the Commonwealth.

"Under the implied consent act, a motorist is deemed to have consented to submit to a chemical test for intoxication after being arrested for driving while under the influence of intoxicating liquor. Such consent is a condition to the lawful exercise of the driving privilege, and it is inferred from the operation of a motor vehicle on the highways. The consent extends to all motorists driving on the public roads of the Commonwealth, not only those possessing a Pennsylvania operator's license. The implied consent is, however, limited to suspension of the driving privilege of any person who refuses to submit to a test, unless he is incapable of consenting. Thus, if the motorist refuses to take the test, it may not be lawfully administered." Comment, *The Pennsylvania Implied Consent Law: Problems Arising in a Criminal Proceeding*, 74 Dick.

---

[1] The state, as owner of highways, roads, streets and bridges, may make any regulation necessary for protection of life or property thereon. Furthermore, the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the Commonwealth is vested in the Legislature, and is based, not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the state. *Maurer v. Boardman*, 336 Pa. 17, 7 A. 2d 466 (1939), *aff'd sub nom. Maurer v. Hamilton*, 309 U.S. 598 (1940) (Footnote added.)

L. Rev. 219, 222-3 (1970); *see also* Annot., 88 A.L.R. 2d 1064 (1963).

Cognizant that "licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment . . . whether the entitlement is denominated a 'right' or a 'privilege'," *Bell v. Burson*, 402 U.S. 535, 539 (1971), we conclude that the language and reasoning of Judge BECKERT in *Parker and Burch Licenses*, 54 Pa. D. & C. 2d 142, 144-5 (Bucks Co. C.P. 1971), is applicable here. There the operator attempted "to equate this appeal, although civil in nature, with a criminal action. We fail to see the similarity. We are, of course, dealing here with an 'implied consent law' predicated upon the principle that the operation of a motor vehicle upon the highways is a privilege, not a right and, therefore, the legislature could prescribe conditions on which that privilege is exercised and invoke sanctions denying the privilege in order to prevent unsafe driving. Accordingly, our Legislature enacted the present statute which puts a *choice* to a motorist who is believed to be operating his vehicle while under the influence of intoxicating liquor. The statute does not oblige or compel one situate in the appellant's shoes to submit to a breath test and, therefore, to incriminate himself in the eyes of the Secretary of Transportation. The licensee . . . is expressly given the right and option of refusal, and if he submits to the test, all of the constitutional safeguards are operative in his favor and for his protection at the subsequent criminal trial.

"Specifically turning to the question at hand, the language of the statute is clear and there is nothing therein contained requiring the police officer to go any further than to request the motorist to submit to the test. While it may be the better practice for the officer to inform the motorist [that his refusal to take the test might result in a suspension of his license] we

540

cannot interpret the statute as placing such a burden upon the officer to do so, or in holding that the failure to so advise would be grounds for the reversal of the secretary's suspension of the motorist's operating privileges." *Accord, Commonwealth v. Langford,* 20 Ches. Co. Rep. 124 (1972).

The lower court's reliance on *Kesler v. Department of Motor Vehicles,* 81 Cal. Rptr. 348, 459 P. 2d 900 (1969), is misplaced. The California statute specifically states: "Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months." Since the Pennsylvania statute does not require that the operator be advised that his license may be suspended for refusal to take the test, we therefore conclude that there is no obligation on the part of the police officer to so advise the operator.

The order of the Court of Common Pleas of Cambria County is reversed, and the order of the Secretary of Transportation is reinstated.