Edward Keith PRICE,
Plaintiff-Appellee,

v.

Paul W. REED, Jr., Commissioner, Oklahoma Department of Public Safety, Defendant-Appellant.

No. 62195.

Supreme Court of Oklahoma.

July 8, 1986.
As Corrected July 24, 1986.

Blair Easley, John K. Lindsey, Dept. of Public Safety, Oklahoma City, for defendant-appellant.

Stephen D. Beam, Weatherford, for plaintiff-appellee.

OPALA, Justice.

Under challenge here is the constitutionality of the implied consent law, 47 O.S. Supp.1982 § 754.[1] The questions presented are whether § 754, insofar as it appears to authorize a determination to be made— *in a postacquittal* driver's license revocation hearing—that the arresting officer had reasonable grounds to believe the accused, while under the influence of alcohol, was in actual, physical control of a vehicle [1] violates the constitutional guarantee against double jeopardy by subjecting the licensee to a retrial of a criminal offense or to multiple punishments for its commission and [2] constitutes an impermissible encroachment either by the executive or the legislative branches upon powers that are constitutionally ascribed to the judiciary. We answer both questions in the negative.

Edward Price [Price] was arrested and charged with being in actual, physical control of a motor vehicle while under the influence of alcohol. He voluntarily submitted to a breath test. Its results showed that he had a blood-alcohol content of 0.18. Price then received notice his driver's license would be suspended for ninety days. After Price had been acquitted of the charge in municipal court, the Commissioner of the Department of Public Safety [Department] revoked his driver's license for a period of three months. Following an administrative hearing held at Price's request the revocation order was sustained.

Price appealed from the Department's order to the district court. At a *de novo* trial, no controversy was tendered as to any of the four issues defined in 47 O.S. Supp.1982 § 754(5)(a).[2] Although the trial court found that Price had been in actual, physical control of a vehicle while his blood-alcohol content was over 0.10, it set aside the Department's revocation order, declaring § 754 unconstitutional insofar as it may affect a person who was in actual, physical control of a vehicle while under the influence of alcohol, because it violates Art. 2, § 21, Okl. Const.[3] and Art. 4, § 1,

---

1. See *infra* note 2 for the pertinent text of 47 O.S.Supp.1982 § 754.

2. The Implied Consent Law, 47 O.S.Supp.1982 § 754(5)(a), provides, in pertinent part, that the hearing before the authorized agent of the Commissioner of Public Safety " * * * shall cover the issues of whether the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol ... and whether the person was placed under arrest.

   a. If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, the scope of the hearing shall also cover the issues as to whether:
   (1) the testing procedures used were in accordance with existent rules of the Board of Tests for Alcohol and Drug Influence;
   (2) the person was advised that his privilege to drive would be revoked or denied if the test result reflected an alcohol concentration of ten-hundredths (0.10) or more;
   (3) the test result in fact reflects such alcohol concentration; and
   (4) the breath or blood specimen was obtained from the person within two (2) hours of his arrest."

3. See text in Part I for the pertinent provisions of Art. 2, § 21, Okl. Const.

Okl. Const.[4] For the reasons to be stated, we reverse the trial court's reinstatement of Price's driver's license.

## I

## A DRIVER'S LICENSE REVOCATION WHICH RESTS ON THE SAME FACTS AS AN EARLIER CRIMINAL CHARGE DOES NOT VIOLATE THE CONSTITUTIONAL GUARANTEE AGAINST DOUBLE JEOPARDY

Price argues that because his driver's license revocation hearing before the Department followed his acquittal in municipal court on criminal charges arising from the same incident, he was impermissibly placed twice in jeopardy. We disagree.

Oklahoma's prohibition against double jeopardy, Art. 2, § 21, Okl. Const., provides that no one, "... after having been once acquitted by a jury, [shall] be again put in

**4.** See *infra* note 23 for the text of Art. 4, § 1, Okl. Const.

**5.** The Double Jeopardy Clause of the Fifth Amendment, U.S. Const., provides in pertinent part:
"No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb...."

**6.** *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 [1969] and *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 [1984].

**7.** *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 [1969]; *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 [1980]; *Justices of Boston Municipal Court v. Lydon, supra* note 6, 104 S.Ct. at 1813 and *Johnson v. State,* Okl.Cr., 611 P.2d 1137, 1141 [1980] and *Marutzky v. State,* Okl.Cr., 514 P.2d 430, 431 [1973].
These protections are implicated only when the accused has actually been placed in jeopardy, i.e. (a) when a jury has been empaneled and sworn or (b) when the judge in a bench trial begins to hear the evidence. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 [1975]; *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 [1973]; *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 [1977]; *Ozbun v. State,* Okl.Cr., 659 P.2d 954, 956 [1983].

jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense." The federal counterpart—the Fifth Amendment, U.S. Const.[5]—is applicable to the states through the Fourteenth Amendment.[6]

Federal and state jurisprudence both recognize that three separate guarantees make up the double jeopardy clause. The provision affords protection from [1] a second prosecution for the same offense after acquittal, [2] a second prosecution for the same offense after conviction and [3] multiple punishments for the same offense.[7]

While the primary goal of barring retrial on a criminal charge *after acquittal* is to prevent the State from mounting successive prosecutions to wear down the defendant,[8] an acquittal is never a bar to a

**8.** *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 [1957] and *Justices of Boston Municipal Court v. Lydon, supra* note 6, 104 S.Ct. at 1813. In *Lydon* the Court quoted the following language from *Green, supra:*
"'The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'"
In *Smalis v. Pennsylvania,* —— U.S. ——, 106 S.Ct. 1745, 90 L.Ed.2d 116 [1986] the Court, quoting from *Abney v. United States,* 431 U.S. 651, 661–662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 [1977], said:
"'[T]he guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a *criminal trial* more than once for the same offense.... Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause

*civil action* that arises out of the same facts as those which formed the basis of the criminal offense.[9] No acquittal proves that the defendant is innocent; it merely reflects that there was a reasonable doubt in the jury's mind as to his guilt. Moreover, an acquittal does not rule out the possibility that the government could show, by a preponderance of the evidence [10] adduced in a civil contest, that the acquitted criminal defendant, while under the influence of alcohol, was in actual, physical control of a motor vehicle.[11] The difference in the relative burdens of proof in criminal and civil actions makes the bar of collateral estoppel (issue preclusion) inapplicable.[12]

■ In short, the double jeopardy clause does not raise an automatic barrier to the imposition of both a criminal and a civil sanction for the same act or omission.[13] Double jeopardy would be invocable here only if [1] the driver's license revocation sanction were intended and did qualify as "punishment" so that the proceeding to revoke was essentially a criminal retrial[14] or [2] the sanction were so

was designed to prohibit.'" [Emphasis added.]

**9.** See Annot., Acquittal or Conviction in Criminal Prosecution As Bar to Particular Actions for Forfeiture of Property or for Statutory Damages or Penalty—Federal Cases, 79 L.Ed.2d 960, 972, 977 [1984]; Annot. Suspension or Revocation of Driver's License for Refusal to Take Sobriety Test, 88 A.L.R.2d 1064 [1963] and Annot., Conviction or Acquittal in Previous Criminal Case as Bar to Revocation or Suspension of Driver's License on Same Factual Charges, 96 A.L.R.2d 612 [1984].

**10.** *Smith v. State ex rel. Department of Public Safety,* Okl., 680 P.2d 365, 368 [1984]; *Peters v. Oklahoma Department of Public Safety,* Okl., 557 P.2d 908, 909 [1976] and *Matter of Phelps,* Okl., 548 P.2d 1021, 1023 [1976].

**11.** *Application of Baggett, infra* note 22 at 1019; *Smestad v. Ellington,* 191 N.W.2d 799 [N.D. 1971]; *Commonwealth, Dept. of Transportation v. Abraham,* 7 Pa.Cmwlth. 535, 300 A.2d 831, 832–833 [1973]; Annot., 88 A.L.R.2d 1064, *supra* note 9; Annot., 96 A.L.R.2d 612, *supra* note 9; *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 [1984] and *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 2374, 76 L.Ed.2d 595 [1983].

The constitutionality of implied consent laws has not gone untested in the U.S. Supreme Court. In *Schmerber v. State of California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 [1966] the Court upheld a state-compelled blood test against a claim that it infringed the Fifth Amendment right against self-incrimination. In *South Dakota v. Neville,* 459 U.S. 553, 559, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 [1983], the Court noted that *Schmerber, supra,* clearly allows a state to force a person who is suspected of driving while intoxicated to submit to a blood-alcohol test. The Court observed that the penalty for refusing to take a blood-alcohol test—a driver's license revocation—is "unquestionably legitimate, assuming appropriate procedural

protections." *South Dakota v. Neville, supra,* 459 U.S. at 560, 103 S.Ct. at 920.

**12.** *United States v. One Assortment of 89 Firearms, supra* note 11, 465 U.S. at 361–362, 104 S.Ct. at 1103; *Helvering v. Mitchell,* 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 [1938]; *Commonwealth, Dept. of Transportation v. Abraham, supra* note 11, 300 A.2d at 832 and Annot., 96 A.L.R.2d 612, *supra* note 9 at 614.

**13.** *Marquardt v. Webb,* Okl., 545 P.2d 769, 772 [1976]; *Robertson v. State ex rel. Lester, infra* note 15 at 1103; *United States v. One Assortment of 89 Firearms, supra* note 11, 465 U.S. at 359–360, 104 S.Ct. at 1107; *Helvering v. Mitchell, supra* note 12, 303 U.S. at 399, 58 S.Ct. at 633 and *Atkinson v. Parsekian,* 37 N.J. 143, 179 A.2d 732, 738 [1962].

**14.** "Jeopardy," as used in Art. 2, § 21, Okl. Const., applies *only* in criminal prosecutions. See, *Ex Parte Kirk,* Okl.Cr., 96 Okl.Cr. 272, 252 P.2d 1032, 1034 [1953] and *Pickens v. State,* Okl.Cr., 393 P.2d 889, 891 [1964]. In *Pickens,* the Court of Criminal Appeals said:

"Jeopardy, in its constitutional and common-law sense, has a strict application to criminal prosecutions only; and the word 'jeopardy,' as used in the Constitution, signifies the danger of conviction and punishment which the defendant in a criminal prosecution incurs when put upon trial before a court of competent jurisdiction under an indictment or information sufficient in form and substance to sustain a conviction."

In *Kirk, supra,* the court held that, without violating double jeopardy, a prisoner could be tried for escape in the district court and also be subject to a separate hearing and punishment for violation of institutional rules and regulations which arose from the escape incident. *Kirk* is in accord with extant federal jurisprudence. See *United States v. Salazar,* 505 F.2d 72, 75 [8th Cir.1974]; *United States v. Stead,* 528 F.2d 257, 259 [8th Cir.1976]; *United States v. Acosta,* 495 F.2d 60, 62 [10th Cir.1974]; *United*

punitive either in purpose or in effect as to transform what may have been intended as a civil remedy into a criminal penalty.

In *Robertson v. State ex rel. Lester*[15] we held that a driver's license revocation hearing under the implied consent law then in force was an administrative proceeding, civil/regulatory in nature and distinct from any criminal charge. Later-enacted amendments to § 754 have not altered the essential character of that hearing.[16] Furthermore, a *criminal trial* exacts a personal penalty from a convicted defendant in the form of a fine or incarceration, while a *postacquittal proceeding* to assess one's continued eligibility for a driver's license (as a result of noncompliance with the implied consent law) addresses a person's continued fitness to hold a license.[17]

Price relies on *Johnson v. State*[18]—a case decided entirely in the context of the criminal process—and seeks to apply its language to the regulatory proceeding here by (a) equating the revocation hearing to a criminal trial and (b) characterizing the temporary revocation of his license as a "penalty" because his employment makes travel necessary.

▮▮▮ Having earlier rejected the theory that a revocation hearing is the equivalent of a criminal trial, we likewise recede from the notion that a temporary revocation of one's driver's license is a form of criminal punishment which implicates the fundamental law's protection against double jeopardy. Revocation of a driver's license is part of a *civil/regulatory scheme* that serves a governmental purpose vastly

*States v. Boomer,* 571 F.2d 543, 546 [10th Cir. 1978] and *Orosco v. United States,* 526 F.Supp. 756, 759 [W.D.Okl.1981].

**15.** Okl., 501 P.2d 1099, 1103 [1972]; *Application of Baggett, infra* note 22 at 1018; see also *Ballard v. State, Motor Vehicle Division,* 595 P.2d 1302, 1304 [Utah 1979]; *Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685, 693 [1971]; *Mills v. Bridges,* 93 Idaho 679, 471 P.2d 66, 69 [1970]; *Fritts v. Department of Motor Vehicles,* 6 Wash.App. 233, 492 P.2d 558, 562 [1971]; *Burbage v. Department of Motor Vehicles,* 252 Or. 486, 450 P.2d 775, 778 [1969]; *Severson v. Sueppel,* 260 Iowa 1169, 152 N.W.2d 281, 285 [1967] and *Blow v. Commissioner of Motor Vehicles,* 83 S.D. 628, 164 N.W.2d 351, 352–353 [1969].

In *Atkinson v. Parsekian, supra* note 13, a driver acquitted of criminal charges arising from a fatal car accident invoked the double jeopardy clause because he claimed that he was found guilty of the same offense in his postacquittal revocation proceeding before an administrative official. The court held that:

"It is well settled that the Legislature has the constitutional power to impose both a criminal and civil or administrative sanction in respect to the same act or omission ... The double jeopardy clause merely prohibits attempting a second time to punish criminally for the same offense ... The proceedings before the Director ... are administrative and not criminal, even though they arise out of the commission of an offense punishable by the courts ... Although the suspension or revocation of a driver's license by the Director may appear to be punishment to the wrongdoer, this is not enough to characterize the

statutory grant of power as criminal in nature. The primary object of the statute is to foster safety on the highway and not to impose criminal punishment to vindicate public justice." 179 A.2d at 738.

In *Commonwealth, Dept. of Transportation v. Abraham, supra* note 11, 300 A.2d at 832–833, a motorist acquitted in a criminal proceeding of operating a motor vehicle while under the influence of alcohol appealed from a six-month suspension of his operator's license for refusing to comply with the implied consent law. The court held that, since the suspension of the license was the result of a civil proceeding while the motorist's acquittal stemmed from a criminal proceeding, the civil regulatory body did not act improperly in suspending the license.

**16.** 47 O.S.1981 § 754 was most recently amended in 1982. Okla.Sess.L.1982, Ch. 273, § 7 and Okla.Sess.L.1982, Ch. 294, § 5. The scope of the hearing was broadened in cases where the license's revocation or its denial was based on breath, or blood, test results. The last amendment gives greater protection to a licensee since the Department now has the additional burden to prove the validity of the test and to show a blood-alcohol content of at least 0.10.

**17.** See *Ballard v. State, Motor Vehicle Division, supra* note 15 at 1305.

**18.** See footnote 7 *supra* at 1141.

different from criminal punishment. The state's interest here is to foster safety by temporarily removing from public thoroughfares those licensees who have exhibited dangerous or erratic behavior.[19] Because a civil revocation proceeding is distinct from criminal law enforcement, the double jeopardy clause cannot be implicated. One's claim to a driver's license is indeed a protectible property interest[20] that may not be terminated without due process guaranteed by the Fourteenth Amendment.[21] In an appeal from a driver's license revocation order the focus is hence not on the double jeopardy clause but rather on the due process standards that are built into the regulatory scheme and were applied in the proceedings below. We reiterate our holdings in *Robertson* and *Application of Baggett*[22] that an acquittal upon the criminal charge of being in actual, physical control of a vehicle while under the influence of alcohol raises no constitutional barrier to a regulatory proceeding for the revocation of a driver's license.

## II
### SECTION 754 IS NOT TAINTED BY AN UNCONSTITUTIONAL ENCROACHMENT UPON THE POWERS OF THE JUDICIARY

Price argues that the provisions of § 754 "encroach" upon the power of the judicial service in violation of Art. 4, § 1, Okl. Const.,[23] because a § 754 license revocation calls for the application of an impermissibly reduced standard of persuasion. He asserts that § 754 abrogates the court's "inherent" right to structure a meaningful judicial inquiry by lowering the traditional "preponderance-of-the-evidence" to a "reasonable-grounds-to-believe" standard. He urges that the preponderance-of-the-evidence test constitutes the irreducible constitutional minimum under the due process clause of Art. 2, § 7, Okl. Const.

■ Price's argument is without merit. The clear language of § 754(5) defines the range of inquiry—i.e. the issues to be resolved—rather than the burden of proof.[24] Preponderance of the evidence is the measure of evidentiary persuasion to be used in revocation hearings.[25] The dis-

---

**19.** *Robertson v. State ex rel. Lester, supra* note 15 at 1102. The U.S. Supreme Court has given its approval to this governmental interest. In *Illinois v. Batchelder*, 463 U.S. 1112, 1118, 103 S.Ct. 3513, 3516, 77 L.Ed.2d 1267 [1983], the Court said:

> "The interest of the states in depriving the drunk driver of permission to continue operating an automobile is particularly strong. We recently commented on '[t]he carnage caused by drunk drivers' in *South Dakota v. Neville*, 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). See also *Mackey v. Montrym, supra*, 443 U.S. [1] at 17–18, 99 S.Ct. [2612] at 2620–2621 [61 L.Ed.2d 321 (1979) ]; *Perez v. Campbell*, 402 U.S. 637, 657 and 672, 91 S.Ct. 1704, 1715 and 1722, 29 L.Ed.2d 233 (1971) (BLACKMUN, J., concurring); *Tate v. Short*, 401 U.S. 395, 401, 91 S.Ct. 668, 672, 28 L.Ed.2d 130 (1971) (BLACKMUN, J., concurring); *Breithaupt v. Abram*, 352 U.S. 432, 439, 77 S.Ct. 408, 412, 1 L.Ed.2d 448 (1957)."

**20.** *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 [1971]; *Illinois v. Batchelder, supra* note 19, 463 U.S. at 1116, 103 S.Ct. at 3515 and *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 [1979].

**21.** *Illinois v. Batchelder, supra* note 19, 463 U.S. at 1116, 103 S.Ct. at 3515.

**22.** Okl., 531 P.2d 1011, 1017 [1974]. Because the implied consent law was amended after *Bag-*

*gett,* that opinion is no longer a correct exposition of the present statutory law. See *Smith v. State ex rel. Department of Public Safety, supra* note 10. Our statements in *Baggett* as to the effect of an acquittal on a subsequent driver's license revocation remain unaffected by the pronouncement in *Smith, supra* note 10, and continue viable.

**23.** Art. 4, § 1, Okl. Const. provides:

"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislature, Executive and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distict, and neither shall exercise the powers properly belonging to either of the others."

**24.** The terms of 47 O.S.Supp.1982 § 754(5) provide in pertinent part:

"* * * The hearing shall be recorded and its *scope shall cover the issues* of whether the officer had reasonable grounds to believe the person ... was in actual physical control of the vehicle ... and whether the person was placed under arrest." [Emphasis added.]

**25.** In Application of Baggett, *supra* note 22 at 1016, we said "* * * the legal burden of proof in the criminal case is 'beyond a reasonable doubt,' while in the Suspension Hearing, the legal burden of proof is 'preponderance of evidence'...."

trict court implicitly applied this standard in finding that the arresting officer had reasonable grounds to believe that Price, while under the influence of alcohol, was in actual, physical control of the vehicle.[26]

■■■■ The legislature may define the range of inquiry to be conducted in proceedings for temporary revocation of a driver's license. By Art. 5, § 36, Okl. Const., legislative authority is extended to all rightful subjects of legislation.[27] Any doubt as to the legislature's power to act should be resolved in favor of the enactment's validity.[28] Both the issuance and revocation of drivers' licenses may be statutorily regulated for the protection of the traveling public. If the statute is not fraught with infirmity and due process was in fact applied, there can be no constitutional flaw either in the regulatory scheme or in the procedure.

■■ The district court declined to rule on Price's other due process claims under Art. 2, § 7, Okl. Const. No specific violation of the fundamental law's due process safeguards is called to our attention. Moreover, since Price does not contend on appeal that the trial court's reinstatement of his driver's license should be affirmed as legally correct because he was in fact deprived of some basic constitutional rights in the hearings conducted before the Department, we need not pause here to consider any error in failing to accord Price the quality of administrative process that was his due.[29] The legislature may, of course, define the issues to be resolved in a revocation hearing and, since, as we hold here, a preponderance of the evidence is the standard that must be and was applied in the decision-making process, the challenged enactment's provisions are free from the taint of legislative or executive "encroachment" upon powers that may be claimed as constitutionally ascribed solely to the judiciary.

The trial court's order reinstating the appellee's driver's license is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this pronouncement.

REVERSED AND REMANDED.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, KAUGER and SUMMERS, JJ., concur;

WILSON, J., concurs in result.

We have consistently followed this pronouncement in *Smith v. State ex rel. Department of Public Safety, supra* note 10 at 268; *Appeal of Dungan,* Okl., 681 P.2d 750, 754 [1984] and *Peters v. Oklahoma Department of Public Safety,* Okl., 557 P.2d 908, 909 [1976].
In *Dungan, supra,* we said:
"In cases involving revocation of driver's license under the Implied Consent Law, the test of sufficiency of the evidence is the preponderance of the evidence. *Peters v. Oklahoma Dept. of Public Safety,* Okl., 557 P.2d 908 [1976]. Pursuant to Section 754(5), the burden was on the Department to prove that it was more probably true than not true that the officer had reasonable grounds to believe that the appellant had been driving while under the influence of intoxicants, in contradistinction to proving *the fact* that the appellant had been driving under the influence." [Footnote omitted, emphasis theirs.]

26. The trial court explicitly rejected the criminal law's test—beyond a reasonable doubt—as inapplicable here and found that under a lesser standard there was sufficient evidence to establish "reasonable grounds" to arrest. Although the judge did not specifically state that this lesser criterion was a preponderance of the evidence, it does not follow that his ruling is fatally infirm. The appellee utterly failed to overcome the law's presumption that the process applied was error-free.

27. Art. 5, § 36, Okl. Const., provides:
"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

28. *Wiseman v. Boren,* Okl., 545 P.2d 753, 760–761 [1976].

29. A successful party in the trial court may, without a counterappeal, argue before an appellate court that errors committed below to his prejudice would, if corrected, demonstrate the result reached in his favor to have been correct. *Woolfolk v. Semrod,* Okl., 351 P.2d 742, 745 [1960]; *May v. May,* Okl., 596 P.2d 536, 540 [1979]; *Matter of Estate of Bradshaw,* Okl., 606 P.2d 578, 580 [1980] and *Nilsen v. Tenneco Oil Co.,* Okl., 614 P.2d 36, 39 [1980].