# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rashida Merida Malik    :
           :
    v.      :  No. 1408 C.D. 2022
           :  Argued: October 10, 2023
Commonwealth of Pennsylvania, :
Department of Transportation,  :
Bureau of Driver Licensing,   :
      Appellant :


BEFORE:  **HONORABLE RENÉE COHN JUBELIRER,** President Judge
      **HONORABLE PATRICIA A. McCULLOUGH,** Judge
      **HONORABLE CHRISTINE FIZZANO CANNON,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**  **FILED: November 8, 2023**


The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department), appeals from an Order of the Court of Common Pleas of Allegheny County (trial court) sustaining an appeal of Rashida Merida Malik (Licensee) from the Department's suspension of her driver's license. Department argues the trial court erred as a matter of law in concluding Licensee did not refuse to submit to a chemical test and granting her appeal. Upon review, we reverse.

On April 23, 2022, Licensee was arrested for suspected driving under the influence. (Trial Court Opinion (Trial Ct. Op.) at 1-2.) Department suspended Licensee's driver's license for a period of one year based upon Licensee's alleged refusal to submit to a chemical test pursuant to Section 1574(b) of the Vehicle Code,

75 Pa.C.S. § 1574(b), also known as the Implied Consent Law. (*Id*. at 1.) Licensee appealed, and the trial court held a *de novo* hearing on November 17, 2022. (*Id*.) Department presented Officer David Horak of the Ross Township Police Department as its sole witness. The trial court summarized Officer Horak's testimony as follows:

> Officer Horak had stopped [Licensee]'s vehicle on April 23, 2022, for suspected driving under the influence of alcohol after witnessing her erratic driving. [Licensee] had glassy[,] bloodshot eyes and slurred speech, appeared highly intoxicated and admitted to drinking "a lot." ([Hearing Transcript (HT)[1]] at 8). After verifying her license information, Officer Horak found [Licensee] slumped over and passed out in the driver's seat. (HT at 9). He woke her up by calling her name, then he and another officer had to help [Licensee] out of her car and into the police vehicle, where she was arrested. (HT at 10). Officer Horak told [Licensee] he was taking her to the hospital for chemical testing of her blood and she consented, saying "yes, that's fine." (HT at 11). [Licensee] was passed out when she arrived at the hospital and had vomited in the police vehicle. She was placed in a wheelchair and vomited a few more times before entering the hospital. (HT at 12). [Licensee] passed out during registration. When they got to a room Officer Horak read the entire DL-26 form warnings[2] to [Licensee]. (HT at 14). [Licensee] was "not very conscious", had her head down and was slumped over, and when asked whether she would submit to the blood draw she said no. Officer Horak asked her again and she said no and put her head down. (HT at 15).

(Trial Ct. Op. at 1-2.)

Although the trial court found Officer Horak's testimony "exceptionally credible and exceptionally consistent," it nevertheless sustained Licensee's appeal. (HT at 35.) The Department appealed, and the trial court subsequently issued an

---

[1] The hearing transcript is in the Reproduced Record at pages 9a through 43a.

[2] The DL-26 form, which was submitted into evidence, indicates Licensee was "unable to sign" due to being "[e]xtremely [i]ntox[icated.]" (Department's Exhibit 1.)

opinion explaining its reasoning. After summarizing the facts, as stated above, trial court explained:

> Although it can be deemed a refusal when a motorist is unconscious from suspected alcohol consumption, and thus unable to consciously refuse to submit to a chemical blood test, here Officer Horak testified that [Licensee] did consent before arriving at the hospital. However, after arriving at the hospital, Officer Horak could not keep her awake. When he read [Licensee] the warnings, she was pretty much passed out the whole time. Officer Horak did not believe [Licensee] was conscious enough to consent or refuse.

(*Id.* at 3.)

On appeal to this Court,[3] Department argues that the trial court erred as a matter of law in concluding that Licensee did not refuse chemical testing when she did not consent after Officer Horak read Licensee the implied consent warnings contained in DL-26 form. (Department's Brief (Br.) at 18.) Specifically, Department contends that anything less than an unequivocal assent by a licensee of an officer's request to submit to a chemical test is a refusal. (*Id.* at 20-22.) In addition, the Department argues Licensee did not prove, via medical evidence, that she was physically incapable of completing a chemical test or that her refusal to submit was not knowing and conscious and not due to intoxication. (*Id.* at 22-24, 26-29.)

Licensee responds that the trial court correctly sustained Licensee's appeal because it found that Licensee consented to a chemical test even though she subsequently could not consent due to a lack of consciousness at the hospital.

---

[3] In reviewing a driver's license suspension, "[o]ur standard of review is limited to determining whether [the trial court] committed an error of law, whether [the trial court] abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

(Licensee's Br. at 8-10.) Thus, Licensee argues she "was unable to consciously refuse to submit to a chemical blood test." (*Id.* at 9.)[4]

Section 1547 of the Vehicle Code states:

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . . 3802 [of the Vehicle Code, 75 Pa.C.S. § 3802] (relating to driving under influence of alcohol or controlled substance). . . .

(b) Civil penalties for refusal.--

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person. . . :

(i) . . . for a period of 12 months.

75 Pa.C.S. § 1547(a), (b)(i). Further,

---

[4] Licensee also argues that because Officer Horak withdrew the "refusal charge[,]" a license suspension cannot follow. (Licensee's Br. at 6-7.) Our Court has held that "[t]he Department's suspension proceeding for refusal to take a [blood] test is an independent civil proceeding separate and distinct from any criminal charges brought against a [licensee]." *Hando v. Commonwealth*, 478 A.2d 932, 936-37 (Pa. Cmwlth. 1984); *See also Dep't of Transp., Bureau of Traffic Safety v. Abraham*, 300 A.2d 831, 832 (Pa. Cmwlth. 1973) (holding a licensee's acquittal of the underlying criminal offense of driving under the influence is separate and distinct from the civil license suspension for refusal to submit to a chemical test). It is unclear precisely to which charge Licensee refers. However, we note that there is no evidence of record that any of Licensee's criminal charges were withdrawn. While Licensee attempted to make this argument during the hearing before the trial court, the trial court sustained Department's objection on relevancy grounds, HT at 20-22, 34-35, which is supported by this Court's well-settled caselaw.

4

[t]o sustain a license suspension under Section 1547(b) of the Vehicle Code, [Department] has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once [Department] meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013). It is the third element that is at issue here.

It is well settled that when a licensee is asked to submit to a chemical test, anything other than an unequivocal assent to such test constitutes a refusal. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018). In determining whether a refusal was a conscious decision, this Court has found

[w]here a driver has consumed alcoholic beverages sufficient to make [them] mentally or physically incapable of assenting to, or participating in, the alcohol test, that failure obviously stems directly from the driver's voluntary decision to imbibe alcohol. The fact that the driver did not knowingly or consciously fail to take the test, at the juncture of the request, is not determinative; the prospective loss of mental and physical capacity was a foreseeable consequence when the driver undertook consumption of the intoxicant.

*Walthour v. Dep't of Transp.*, 458 A.2d 1066, 1067 (Pa. Cmwlth. 1983); *see also Dep't of Transp., Bureau of Traffic Safety v. Mumma*, 468 A.2d 891, 893 (Pa. Cmwlth. 1983) ("Voluntary intoxication is not a justification for a motorist's failure to submit to an alcohol test."). The burden is on the licensee to prove by "competent medical evidence that a medical condition, unrelated to the consumption of alcohol, rendered [their] refusal unknowing." *Barbour v. Dep't of Transp., Bureau of Driver*

*Licensing,* 732 A.2d 1157, 1160 (Pa. 1999) (citation and internal quotations omitted).

Although the trial court found Licensee consented at the scene of the traffic stop, Licensee subsequently refused to submit to a blood draw **twice** at the hospital after Officer Horak read Licensee the DL-26 form. (Trial Ct. Op. at 2.) Licensee did not present any medical evidence that her refusal to submit to a test was due to anything other than alcohol consumption. *Barbour*, 732 A.2d at 1160. The trial court concluded that Licensee could not consent to a chemical test at the hospital because she was unconscious. (Trial Ct. Op. at 3.) However, as the trial court found, Licensee twice responded no when Officer Horak read Licensee the DL-26 form and asked if she would consent to chemical testing. To the extent Licensee was in and out of consciousness, this was a foreseeable consequence from voluntary consumption of alcohol and is not a justification for the failure to consent to a chemical test. *Walthour*, 458 A.2d at 1067; *Mumma*, 468 A.2d at 893.

Accordingly, the trial court erred in concluding that Licensee consented to a chemical test when, in fact, Licensee twice refused to submit to a test at the hospital. Therefore, we reverse.

_____

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rashida Merida Malik            :
:
:
:
        v.                   :     No. 1408 C.D. 2022
:
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing,        :
              Appellant    :

# O R D E R

    **NOW**, November 8, 2023, the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** President Judge